**No. 21-2231**

# In the United States Court of Appeals for the Seventh Circuit

DeAndre Cherry,

*Petitioner – Appellant*,

v.

United States of America,

*Respondent – Appellee.*

On Appeal from the United States District Court
for the Northern District of Illinois
No. 1:20-cv-04752 – Hon. Ronald A. Guzman

**Opening Brief of DeAndre Cherry**

Matt Gregory
Brian C. McCarty
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
mgregory@gibsondunn.com

*Appointed counsel for Petitioner – Appellant DeAndre Cherry*

Save As Clear Form

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 21-2231

Short Caption: DeAndre Cherry v. USA

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

DeAndre Cherry

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Gibson, Dunn & Crutcher LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Matt Gregory Date: 08/14/2024

Attorney's Printed Name: Matt Gregory

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes ☑ No ☐

Address: 1050 Connecticut Ave. NW, Washington, DC 20036

Phone Number: (202) 887-3635 Fax Number: (202) 831-6088

E-Mail Address: mgregory@gibsondunn.com

Save As    Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 21-2231

Short Caption: DeAndre Cherry v. USA

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
DeAndre Cherry

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Gibson, Dunn & Crutcher LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Brian C. McCarty    Date: 08/14/2024

Attorney's Printed Name: Brian C. McCarty

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes ☐ No ☑

Address: 1050 Connecticut Ave. NW, Washington, DC 20036

Phone Number: (202) 887-3721    Fax Number: (202) 831-6118

E-Mail Address: bmccarty@gibsondunn.com

rev. 12/19 AK

## Table Of Contents

Introduction .......... 1

Jurisdictional Statement .......... 2

Statement Of Issues .......... 3

Background .......... 3

I. Cherry's conviction, sentence, and direct appeal .......... 3

A. Cherry's arrest and trial .......... 3

B. Cherry's sentence .......... 5

C. Cherry's direct appeal .......... 10

II. Cherry's Section 2255 motion and this appeal .......... 10

Summary Of Argument .......... 11

Standard Of Review .......... 13

Argument .......... 13

I. Trial counsel was ineffective in failing to challenge Cherry's statutory sentencing enhancements under Section 841(b) .......... 13

A. Competent defense counsel would have considered a challenge to the use of an Illinois cocaine conviction as a "felony drug offense" under Section 841(b). .......... 14

B. Counsel's failure to object to the enhancement under Section 841(b) prejudiced Cherry in at least two ways .......... 16

1. The Section 841(b) enhancement increased Cherry's minimum term of supervised release. .......... 17

2. The Section 841(b) enhancement increased Cherry's Sentencing Guidelines range. .......... 18

3. Without the Section 841(b) enhancement, Cherry potentially could have negotiated a plea agreement resulting in a lower sentence. .......... 20

II. Trial counsel was ineffective in failing to challenge the career-offender enhancement under the Sentencing Guidelines. 21

A. Competent defense counsel would have considered challenging the use of Cherry's 2003 convictions for the career-offender enhancement. 21

1. The cocaine conviction 22

2. The machine-gun conviction 23

B. Counsel's failure to object to the career-offender enhancement prejudiced Cherry. 25

III. Counsel was ineffective in failing to challenge testimony concerning the confidential informant's out-of-court statements. 27

A. Trial counsel was ineffective in failing to raise objections under the Confrontation Clause or Federal Rule of Evidence 403. 27

B. Appellate counsel was ineffective in failing to raise this issue on appeal. 30

C. Trial and appellate counsel's failure to challenge this testimony was prejudicial. 31

Conclusion 34

## Table Of Authorities

### Cases

*Anderson v. United States*,
94 F.4th 564 (7th Cir. 2024) ........ 13, 20

*Beckles v. United States*,
580 U.S. 256 (2017) ........ 25

*Brecht v. Abrahamson*,
507 U.S. 619 (1993) ........ 31

*Bridges v. United States*,
991 F.3d 793 (7th Cir. 2021) ........ 13, 14, 15, 16, 18, 19, 23, 29

*Brock-Miller v. United States*,
887 F.3d 298 (7th Cir. 2018) ........ 15

*Coleman v. United States*,
79 F.4th 822 (7th Cir. 2023) ........ 1, 11, 15, 16

*Crawford v. Washington*,
541 U.S. 36 (2004) ........ 27

*Cross v. United States*,
892 F.3d 288 (7th Cir. 2018) ........ 22

*Daniels v. United States*,
939 F.3d 898 (7th Cir. 2019) ........ 25

*Elion v. United States*,
76 F.4th 620 (7th Cir. 2023) ........ 26

*Guerrant v. United States*,
142 S. Ct. 640 (2022) ........ 26

*Harris v. United States*,
13 F.4th 623 (7th Cir. 2021) ........ 15

*Jones v. Basinger*,
635 F.3d 1030 (7th Cir. 2011) ........ 28, 29, 31, 32, 33

*Lafler v. Cooper*,
566 U.S. 156 (2012) ........ 20

*Molina-Martinez v. United States*,
578 U.S. 189 (2016) .......... 16, 18, 20

*Osagiede v. United States*,
543 F.3d 399 (7th Cir. 2008) .......... 27

*Peugh v. United States*,
569 U.S. 530 (2013) .......... 19

*Ramirez v. Tegels*,
963 F.3d 604 (7th Cir. 2020) .......... 31

*Strickland v. Washington*,
466 U.S. 668 (1984) .......... 13, 16

*United States v. Cherry*,
920 F.3d 1126 (7th Cir. 2019) .......... 3, 4, 5, 10, 31

*United States v. Currie*,
739 F.3d 960 (7th Cir. 2014) .......... 17

*United States v. Gomez-Alvarez*,
781 F.3d 787 (5th Cir. 2015) .......... 23

*United States v. Hurlburt*,
835 F.3d 715 (7th Cir. 2016) .......... 25

*United States v. Leal-Vega*,
680 F.3d 1160 (9th Cir. 2012) .......... 23

*United States v. Lovelace*,
123 F.3d 650 (7th Cir. 1997) .......... 33

*United States v. Mancillas*,
580 F.2d 1301 (7th Cir. 1978) .......... 30

*United States v. Miller*,
721 F.3d 435 (7th Cir. 2013) .......... 24

*United States v. Nitzkin*,
37 F.4th 1290 (7th Cir. 2022) .......... 24

*United States v. Rollins*,
836 F.3d 737 (7th Cir. 2016) .......... 18, 19, 20, 24, 25

*United States v. Ruth*,
966 F.3d 642 (7th Cir. 2020) .......... 1, 7, 9, 12, 14, 22, 25, 26

*United States v. Sanchez-Garcia*,
642 F.3d 658 (8th Cir. 2011) .......... 23

*United States v. Silva*,
380 F.3d 1018 (7th Cir. 2004) .......... 29

*United States v. Williams*,
133 F.3d 1048 (7th Cir. 1998) .......... 29, 30, 32, 33

*United States v. Wylie*,
991 F.3d 861 (7th Cir. 2021) .......... 17

*Williams v. United States*,
268 F. App'x 563 (9th Cir. 2008) .......... 27

*Wright v. Burt*,
665 F. App'x 403 (6th Cir. 2016) .......... 27

**Statutes**

720 ILCS 570/401(a)(2) .......... 6

720 ILCS 570/401(c) .......... 7

18 U.S.C. § 924(e)(2)(B) .......... 24

21 U.S.C. § 841(a)(1) .......... 4, 6

21 U.S.C. § 841(b) .......... 1, 3, 5, 6, 7, 9, 10, 11, 13, 14, 16, 17, 18, 19, 20, 21, 22

21 U.S.C. § 851 .......... 5, 6, 14, 15, 22

26 U.S.C. § 5845(a) .......... 24

28 U.S.C. § 1291 .......... 2

28 U.S.C. § 1331 .......... 2

28 U.S.C. § 2253(c)(1)(B) .......... 2

28 U.S.C. § 2255 .......... 1, 2, 10, 11, 13, 19, 34

**Sentencing Guidelines**

USSG ch. 5 pt. A (2015) .......... 6, 7, 21

USSG § 2D1.1(c)(8) (2015) .......... 7

USSG § 3E1.1 (2015) .......... 21

USSG § 4A1.2(a)(2) (2015) .......... 8

USSG § 4B1.1 (2015) .......... 6, 7, 12, 21, 22, 25

USSG § 4B1.2 (2015) .......... 7

USSG § 4B1.2 (2011) .......... 8, 23, 24

**Rules**

Fed. R. App. P. 4(a)(4) .......... 2

Fed. R. Evid. 403 .......... 2, 4, 12, 27, 28, 29, 30, 31

## Introduction

Petitioner DeAndre Cherry's trial counsel failed to object to the district court's use of an Illinois cocaine conviction as a "felony drug offense" to enhance his sentence under 21 U.S.C. § 841(b)(1)(B). A few years later, in *United States v. Ruth*, this Court held that an Illinois cocaine conviction is *not* a "felony drug offense" under Section 841(b). 966 F.3d 642, 650 (7th Cir. 2020). Given the failure of Cherry's counsel to object to this error during Cherry's sentencing proceedings, recent precedent from this Court makes clear that the district court should not have denied Cherry's motion for postconviction relief under 28 U.S.C. § 2255. This Court should reverse.

In *Coleman v. United States*, in an identical procedural posture, and on virtually indistinguishable facts, this Court held that trial counsel's failure to consider a categorical challenge to the use of an Illinois cocaine conviction would be ineffective assistance. 79 F.4th 822, 831-32 (7th Cir. 2023). In *Coleman*, the Court reversed a district court's decision rejecting the petitioner's ineffective-assistance claim and remanded for an evidentiary hearing to determine whether trial counsel "considered the possibility of a categorical challenge to Coleman's predicate offenses." *Id.* at 832. Here, the same relief is warranted—at minimum.

The Court should also grant Cherry relief on two other ineffective-assistance claims. *First*, in addition to challenging the use of Cherry's Illinois cocaine conviction to enhance his sentence under Section 841(b), trial counsel should have considered a challenge to the application of the career-offender enhancement in the Sentencing

Guidelines. *Second*, trial counsel should have raised objections under the Confrontation Clause and Federal Rule of Evidence 403 to a government witness's testimony relaying statements made by a confidential informant, and appellate counsel should have raised this issue on appeal.

**Jurisdictional Statement**

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 2255. On May 3, 2021, the district court denied Cherry's motion for relief under Section 2255 and denied a certificate of appealability. RSA1, 19. Cherry subsequently filed at least one timely motion for reconsideration through the prison mail system, Postconviction Dkt., ECF 29 (stating that the motion was post-marked on June 1, 2021), which the district court denied on July 1, 2021, A702.[1]

Cherry had already filed a pro se notice of appeal through the prison mail system on June 28, 2021. A704. Pursuant to Federal Rule of Appellate Procedure 4(a)(4)(B)(i), the notice of appeal became effective on July 1, 2021.

This Court has jurisdiction under 28 U.S.C. §§ 1291 and 2253(c)(1)(B). Cherry filed a pro se motion for a certificate of appealability on September 7, 2021. CA7 Dkt., ECF 8. This Court granted the motion (in part) on March 25, 2022, CA7 Dkt., ECF 9, appointed the undersigned counsel to represent Cherry shortly thereafter, CA7

[1] Proceeding pro se, Cherry filed two motions for reconsideration in the district court, one of which the district court concluded was untimely, A700. The district court agreed, however, that Cherry filed a separate motion for reconsideration on time, A702, which suffices to toll the deadline for Cherry to file his notice of appeal under Federal Rule of Appellate Procedure 4(a)(4)(A).

Dkt., ECF 10, and later granted in part Cherry's counseled motion to expand the certificate of appealability, CA7 Dkt., ECF 18.

This appeal is from a final judgment disposing of all of Cherry's claims.

## Statement Of Issues

1. Whether Cherry's trial counsel was ineffective in failing to object to his statutory sentencing enhancement under 21 U.S.C. § 841(b)(1)(B).

2. Whether Cherry's trial counsel was ineffective in failing to object to his career-offender enhancement under the Sentencing Guidelines.

3. Whether Cherry's trial and appellate counsel were ineffective in failing to challenge a government witness's testimony recounting statements by a confidential informant.

## Background

### I. Cherry's conviction, sentence, and direct appeal

#### A. Cherry's arrest and trial

In May 2012, the DEA worked with an informant to execute a sting operation designed to catch a man the informant allegedly knew as "Mo," who allegedly was planning to meet the informant to buy 13 kilograms of cocaine. *United States v. Cherry*, 920 F.3d 1126, 1130 (7th Cir. 2019). That evening, Cherry arrived in a parking lot in a white Mercedes SUV, drove to the informant's car, exited the Mercedes, and briefly sat inside the informant's car. *Id.*

The informant then exited the car and gave a prearranged signal to DEA agents, who moved in, arrested Cherry, and searched his Mercedes. *Cherry*, 920 F.3d at 1130-31. There, the agents allegedly uncovered large quantities of heroin, cocaine

base, and cash that the agents testified were in plain view. *Id.* at 1131. The next morning, Cherry told the agents that he was returning approximately 300 grams of heroin to the informant because of the poor quality of the drugs. *Id.*

The government charged Cherry with possessing heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1). *Cherry*, 920 F.3d at 1131. In late June 2016, a three-day jury trial began. *Id.* at 1131-32.

During the trial, Agent Brazao testified about the sting operation and Cherry's arrest. A206-22. On direct examination, Agent Brazao did not go into detail about the DEA's conversations with the informant prior to Cherry's arrest. *See id.* On cross-examination, Cherry's attorney asked Agent Brazao several questions about the information that the DEA had received from the informant, and whether it was possible that the drugs allegedly found in Cherry's Mercedes could have come from the informant's car. A231-36, 240-41, 245.

The government then argued that the cross-examination had opened the door to all the informant's out-of-court statements to the DEA. A247-52. The district court agreed that Cherry's counsel had opened the door. A252-54. Then, on redirect, Agent Brazao relayed to the jury several of the informant's incriminating statements concerning Cherry, including the informant's allegations that Cherry (whom the informant allegedly knew as "Mo") was a major drug dealer who arrived at the parking lot planning to purchase 13 kilograms of cocaine. A255-58. Cherry's counsel did not raise any objections to this testimony under the Confrontation Clause or Rule 403.

At the end of the trial, the district court instructed the jury as follows: "You have heard testimony ... about statements made by an informant to agents. Those statements should be considered only for the purpose of explaining the actions of the agents, and you may not consider it for any other purpose." A506.

The jury found Cherry guilty, and the district court denied Cherry's post-trial motions challenging the conviction. *Cherry*, 920 F.3d at 1132.

### B. Cherry's sentence

The case then proceeded to sentencing. As a result of sentencing enhancements under 21 U.S.C. § 841(b)(1)(B) and the career-offender Sentencing Guideline, Cherry's sentence hinged largely on his prior criminal history and, as relevant here, his 2003 Illinois convictions for "manufacture/delivery" of cocaine and possession of a machine gun.

***Statutory enhancements.*** Under the version of Section 841(b) then in effect, a defendant who had previously been convicted of a "felony drug offense" was subject to a statutory sentencing range of 10 years to life, with mandatory supervised release "of at least 8 years." 21 U.S.C. § 841(b)(1)(B) (2016).[2] The government could seek a sentencing enhancement under Section 841(b) only if "before trial, or before entry of a plea of guilty, the [government] file[d] an information … stating in writing the previous convictions to be relied upon." *Id.* § 851(a)(1).

[2] Congress later revised the statute to replace the phrase "felony drug offense" with "serious drug felony." 21 U.S.C. § 841(b)(1)(B).

Here, the only conviction for which the government submitted the required notice pursuant to Section 851(a) was Cherry's 2003 conviction for "manufacture/delivery" of cocaine in violation of 720 ILCS 570/401(a)(2), which the government alleged was a "felony drug offense." A1.

The government's reliance on Cherry's Illinois cocaine conviction impacted his potential sentence as described above—i.e., by increasing his statutory sentencing range to 10 years to life, and by increasing his mandatory minimum term of supervised release to 8 years. In addition, the increase in Cherry's statutory maximum sentence increased his "offense level" under the Sentencing Guidelines from 34 to 37, resulting in a higher Guidelines range. USSG § 4B1.1(b) (2015 version) (listing different offense levels based on different statutory maximum sentences).[3] With an offense level of 34 and a criminal-history category of VI, Cherry's Guidelines range would have been 262 to 327 months. *Id.* ch. 5 pt. A (sentencing table). But with an offense level of 37, Cherry's Guidelines range was 360 months to life. *Id.*

Based on these enhancements, the PSR calculated Cherry's statutory minimum sentence to be 10 years and his statutory maximum sentence to be life imprisonment. PSR at 22 (citing 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 851). The PSR also stated that "[t]he Court *must* impose a term of supervised release of at least eight

[3] Unless otherwise specified, citations to the Sentencing Guidelines are to the version that took effect on November 1, 2015, which is the version used in the presentence report ("PSR"). Criminal Dkt., ECF 190 at 7 (relying on the "2015 Guidelines Manual").

years." *Id.* (citing 21 U.S.C. § 841(b)(1)(B)) (emphasis added). And based on an offense level of 37, the PSR calculated Cherry's Guidelines range to be 360 months to life. *Id.*

Cherry's trial counsel did not object to any of these enhancements or the government's reliance on the Illinois cocaine conviction as a prior felony drug offense. A few years later, this Court held that an Illinois cocaine conviction under 720 ILCS 570/401(c) "is not a predicate 'felony drug offense' that triggers 21 U.S.C. § 841(b)(1)([B])'s sentencing enhancement" because the definition of cocaine under Illinois law is broader than under federal law. *United States v. Ruth*, 966 F.3d 642, 650 (7th Cir. 2020).

***Career-offender enhancement.*** The PSR also designated Cherry as a career offender under USSG §§ 4B1.1(a) and 4B1.2, which resulted in an offense level of 37 and a criminal-history category of VI. PSR at 8, 13. This nearly quadrupled the bottom of the Guidelines range. Without the career-offender enhancement, Cherry's offense level would have been 24 and his criminal-history category would have been V, producing a Guidelines range of just 92 to 115 months. A542; USSG § 2D1.1(c)(8) (providing for an offense level of 24); *id.* ch. 5 pt. A (sentencing table).

The Sentencing Guidelines classify a defendant as a "career offender" if, among other things, "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." USSG § 4B1.1(a). At the time of Cherry's alleged offense in this case, the Guidelines defined a "crime of violence" as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

*Id.* § 4B1.2(a) (2011). As for a "controlled substance offense," the Guidelines defined it as:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

*Id.* § 4B1.2(b) (2011).

To support classifying Cherry as a "career offender" under the Guidelines, the PSR cited three state cases—two from 1993, and one from 2003. PSR at 8, 13. The two 1993 cases resulted in convictions for two counts of attempted murder and one count of armed robbery. *Id.* at 10-11. But the sentences for these three convictions were all "imposed on the same day," May 14, 1993, so they are treated as a single prior felony conviction for purposes of the Guidelines' career-offender enhancement. USSG §§ 4A1.2(a)(2), 4B1.2(c); *see* PSR at 10-11. Thus, for Cherry to have been a career offender, at least one conviction from the 2003 case cited by the PSR (at 8, 13) must have qualified as a "crime of violence" or "controlled substance offense."

The 2003 case resulted in two convictions, one for possession of a machine gun and the other for the manufacture or delivery of cocaine. PSR at 12. The PSR did not specify which of these convictions was the predicate offense for the career-offender

enhancement. *Id.* at 8. In calculating Cherry's criminal history, the PSR described the machine-gun conviction as a "crime of violence," *id.* at 12, but the government's memo to the probation office had argued that the 2003 conviction was "a controlled substances offense" for purposes of the career-offender enhancement, *id.* at 41 (page 11 of the government's memo).[4]

Cherry's counsel did not object to the application of the career-offender enhancement. A534. In *Ruth*, this Court subsequently held that, unlike under Section 841(b), an Illinois cocaine conviction *does* qualify as a predicate "controlled substance offense" under the Sentencing Guidelines. 966 F.3d at 651-54; *see also id.* at 653 (acknowledging a circuit split on the latter question).

***Cherry's sentence.*** The district court adopted the PSR with respect to all of the issues relevant to this appeal, and determined Cherry's Guidelines range to be 360 months to life. Criminal Dkt., ECF 232 at 1. The court then imposed a sentence of 240 months, which was a downward departure of 120 months from the bottom of the Guidelines range. *Id.* at 2, 4-5. The district court also sentenced Cherry to 8 years of supervised release—i.e., the amount that the PSR stated was the statutory minimum under Section 841(b) because of Cherry's Illinois cocaine conviction. *Id.* at 1.

[4] In the decision below, the district court concluded that "the drug offense appears to be the qualifier" based on a reference in the PSR to a "'controlled substance offense.'" RSA13.

### C. Cherry's direct appeal

Cherry appealed his conviction, but appellate counsel did not raise any arguments concerning the sentencing enhancements discussed above (which had not been preserved below by trial counsel) or any arguments challenging Agent Brazao's testimony concerning the informant's out-of-court statements. Instead, appellate counsel challenged: (1) the probable cause supporting Cherry's arrest; (2) the district court's denial of Cherry's motion to suppress evidence found during the warrantless search of his Mercedes; and (3) the government's failure to preserve potentially exculpatory metadata from a camera used to take photographs of his car. *Cherry*, 920 F.3d at 1132. This Court affirmed. *Id.* at 1141.

## II. Cherry's Section 2255 motion and this appeal

In August 2020, proceeding pro se, Cherry filed a motion to vacate his sentence and conviction under Section 2255. A614. Among other claims, Cherry argued that: (1) counsel was ineffective in failing to challenge the sentencing enhancements under 21 U.S.C. § 841(b) and the career-offender Guideline, A652-56; and (2) the informant's out-of-court statements should have been excluded at trial and counsel was ineffective in failing to press a challenge to those statements, A673-79. The district court denied the motion and denied a certificate of appealability. RSA18.

This appeal followed. In March 2022, this Court granted Cherry a certificate of appealability limited to the question whether trial and appellate counsel were ineffective in "failing to contest his enhanced statutory minimum sentence under" Section 841(b). CA7 Dkt., ECF 9 at 1. The Court also appointed counsel for Cherry and

noted that "[u]pon appointment, counsel may move to expand the certificate of appealability if necessary." *Id.* at 2. A few months later, Cherry moved to expand the certificate. CA7 Dkt., ECF 12.

In July 2024, this Court partially granted Cherry's motion to expand the certificate of appealability. CA7 Dkt., ECF 18. Specifically, the Court expanded the certificate to include arguments that: (1) "counsel unreasonably failed to challenge a career-offender enhancement under the advisory Sentencing Guidelines"; and (2) "counsel unreasonably failed to contest the admissibility of a confidential informant's out-of-court statements." *Id.* at 1.

## Summary Of Argument

The district court erred in denying Cherry's motion to vacate his sentence and conviction under Section 2255. In three ways, Cherry's trial and appellant counsel's performance fell below the minimum standards required by the Constitution.

**I.A.** At sentencing, Cherry's trial counsel should have challenged the use of a 2003 Illinois cocaine conviction to enhance his sentence under 21 U.S.C. § 841(b)(1)(B). On nearly identical facts, this Court recently held that counsel's failure to consider such a challenge would be ineffective assistance, reversed a district court's decision to the contrary, and remanded for an evidentiary hearing. *Coleman v. United States*, 79 F.4th 822, 831-32 (7th Cir. 2023).

**I.B.** Counsel's failure to object to the Section 841(b) enhancement prejudiced Cherry in multiple ways. The enhancement increased Cherry's mandatory minimum sentence of supervised release from at least 4 years to at least 8 years, resulting in

the district court sentencing Cherry to 8 years of supervised release in addition to 240 months in prison. The enhancement increased Cherry's Sentencing Guidelines range from 262-327 months to 360 months to life. And without the enhancement, Cherry and the government would have been more likely to negotiate a guilty plea resulting in a lower sentence.

**II.A.** Similarly, trial counsel should have challenged the application of the career-offender enhancement in the Sentencing Guidelines. Neither Cherry's Illinois cocaine conviction nor his Illinois machine-gun conviction should have counted as predicate offenses under USSG § 4B1.1.

**II.B.** Although this Court later held that an Illinois cocaine conviction does qualify as a predicate offense for the career-offender enhancement, *United States v. Ruth*, 966 F.3d 642, 651-54 (7th Cir. 2020), at the time of Cherry's sentencing, precedent in other circuits would have supported a challenge. And even assuming the result in Cherry's case would have been the same as in *Ruth*, counsel's failure to raise the objection deprived Cherry of the opportunity to bring a viable petition for certiorari asking the Supreme Court to resolve the circuit split. Thus, counsel's failure to object to the enhancement was prejudicial.

**III.A.** Finally, Cherry's trial and appellate counsel were ineffective in failing to challenge the admission of Agent Brazao's testimony concerning the confidential informant's statements. Under the Confrontation Clause and Rule 403, these statements were inadmissible because they allowed the government to relay to the jury

the informant's accusations that Cherry was an experienced drug dealer, while simultaneously denying Cherry an opportunity to cross-examine the informant.

**III.B.** This error was prejudicial for multiple reasons. The informant's statements told the jury that Cherry was a drug dealer, and therefore would have led the jury to believe that he was more likely to be guilty of possessing heroin with intent to distribute. The statements corroborated the government's other evidence, making it more likely the jury would resolve any doubts in the government's favor. And Cherry's inability to cross-examine the informant prevented him from asking the informant questions that could have undermined the government's case by, for example, eliciting testimony that could have been inconsistent with the officers' depiction of their investigation.

## Standard Of Review

This Court reviews de novo the district court's decision to deny Cherry relief under Section 2255. *E.g.*, *Anderson v. United States*, 94 F.4th 564, 581 (7th Cir. 2024).

## Argument

### I. Trial counsel was ineffective in failing to challenge Cherry's statutory sentencing enhancements under Section 841(b).

To prevail on an ineffective-assistance claim, a petitioner must show that "'counsel's performance was deficient' and 'the deficient performance prejudiced the defense.'" *Bridges v. United States*, 991 F.3d 793, 803 (7th Cir. 2021) (quoting *Strick-*

*land v. Washington*, 466 U.S. 668, 687 (1984)). Here, Cherry's trial counsel was ineffective in failing to object to the use of his 2003 Illinois cocaine conviction to enhance his statutory minimum and maximum sentences under 21 U.S.C. § 841(b)(1)(B).

The cocaine conviction was the *only* offense that could have triggered the statutory enhancement because it was the only offense included in the information that the government filed prior to trial. A1; 21 U.S.C. § 851(a). Thus, had counsel raised the objection during sentencing, it would have succeeded. *United States v. Ruth*, 966 F.3d 642, 650 (7th Cir. 2020) (Illinois's definition of cocaine is broader than the federal definition). And the statutory enhancement had a concrete impact on Cherry's ultimate sentence by increasing his mandatory minimum term of supervised release, as well has his advisory Guidelines range.

### A. Competent defense counsel would have considered a challenge to the use of an Illinois cocaine conviction as a "felony drug offense" under Section 841(b).

"Sentencing advocacy, both during plea negotiations and before a district court, is in most cases the most important task of a federal criminal defender." *Bridges*, 991 F.3d at 804. Counsel's responsibility to understand sentencing enhancements predicated on prior convictions is especially important given the stakes for defendants. *Id.* at 805. Among other things, reasonably competent defense counsel must understand and consider the "categorical approach" in determining whether to challenge the government's use of a prior conviction to enhance a defendant's sentence. *Id.* at 804-05.

Accordingly, this Court has "rejected the government's argument that examining [a] 'statute to determine if it met the federal definition of felony drug offense' was

too 'sophisticated' and 'convoluted' to expect from defense counsel." *Bridges*, 991 F.3d at 805 (quoting *Brock-Miller v. United States*, 887 F.3d 298, 310-11 (7th Cir. 2018)). "The categorical approach may be counterintuitive and artificial, but, like other complex factual and legal inquiries that regularly arise in criminal defense, competent counsel need to understand it and be able to use it." *Id.*

In the specific context of an Illinois cocaine conviction, this Court has already held that competent defense counsel would consider a challenge under the categorical approach, and that competent counsel would have done so even prior to this Court's decision in *Ruth*. *Coleman v. United States*, 79 F.4th 822, 832 (7th Cir. 2023).[5] Even where "the categorical approach had not yet been applied to prior convictions like [the defendant]'s," competent defense counsel would consider a challenge where a defendant's prior conviction arose under a state law that could be broader than the generic federal offense. *Id.* at 831-32; *see also id.* at 831 (collecting examples of decisions "issued before 2014 … that applied the categorical approach to predicate offenses in other contexts").

Here, as in *Coleman*, trial counsel failed to object to the use of an Illinois cocaine conviction to enhance Cherry's sentence under Section 851. Here, too, the "groundwork for such an argument was, at the very least, foreshadowed by numerous decisions issued before 2014." 79 F.4th at 831. Thus, here, too, "it would have been objectively unreasonable for [Cherry]'s defense counsel to have not even *considered* a

[5] *See also Bridges*, 991 F.3d at 797-98 (similar for Hobbs Act robbery); *Harris v. United States*, 13 F.4th 623, 629 (7th Cir. 2021) ("counsel should have known about a possible categorical challenge to" two "Indiana crimes involving cocaine").

categorical challenge to the government's reliance on prior Illinois cocaine convictions to enhance [Cherry]'s sentence." *Id.* at 832 (emphasis in original). So here, too, Cherry is entitled at least to an evidentiary hearing to determine whether trial counsel "considered the possibility of a categorical challenge" and "if he did consider it, what reasons he had for not raising it." *Id.*

### B. Counsel's failure to object to the enhancement under Section 841(b) prejudiced Cherry in at least two ways.

To establish prejudice, a "defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Bridges*, 991 F.3d at 808 (quoting *Strickland*, 466 U.S. at 694). In the context of a sentencing enhancement, counsel's failure to object is presumptively prejudicial "absent unusual circumstances," "such as when the record shows that the district court would have given the same sentence in any event." *Coleman*, 79 F.4th at 832-33 (citing *Molina-Martinez v. United States*, 578 U.S. 189, 200-01 (2016)).

Here, counsel's failure to object to the use of an Illinois cocaine conviction to increase Cherry's sentence was prejudicial in at least three ways. First, the enhancement increased Cherry's mandatory minimum sentence. Second, it increased the bottom of Cherry's Guidelines range by 98 months. Third, if counsel had challenged the enhancement during plea negotiations, that could have led to a guilty plea and a lower sentence.

### 1. The Section 841(b) enhancement increased Cherry's minimum term of supervised release.

Counsel's failure to object to the Section 841(b) enhancement allowed the government to increase Cherry's mandatory minimum sentence, both for his mandatory prison term, which increased from 5 years to 10, and his mandatory term of supervised release, which increased from 4 years to 8. 21 U.S.C. § 841(b)(1)(B). Even setting aside the increase in the mandatory prison term, the district court's erroneous doubling of the mandatory term of supervised release was plainly prejudicial.

"[A] sentence is a package that includes supervised release," and therefore a district court's erroneous "belie[f] that it had to adhere to the statutory minimum term of supervision" is prejudicial where, as here, the district court sentences a defendant to the minimum term. *United States v. Wylie*, 991 F.3d 861, 863-64 (7th Cir. 2021); *see also United States v. Currie*, 739 F.3d 960, 964 (7th Cir. 2014) ("[W]e cannot say with complete confidence that the court would have imposed the same sentence regardless of the statutory minimum" term of imprisonment). Prejudice is especially obvious where there is "no indication that the district court would have imposed the same [term] absent the error." *Wylie*, 991 F.3d at 864.

Here, the district court sentenced Cherry to what the court erroneously believed was the lowest permissible term of supervised release. A578; *see also* PSR at 22 (stating that "[t]he Court *must* impose a term of supervised release of at least eight years") (emphasis added). The court provided no explanation for why it chose 8 years rather than a lower number—presumably because the court believed a lower number

was foreclosed by Section 841(b). Accordingly, there is at least a "reasonable probability" that the court would have imposed a shorter term of supervised release if counsel had objected to the enhancement. *Bridges*, 991 F.3d at 808.

### 2. The Section 841(b) enhancement increased Cherry's Sentencing Guidelines range.

The Section 841(b) enhancement independently prejudiced Cherry by increasing his Sentencing Guidelines range. "[T]he Guidelines are not only the starting point for most federal sentencing proceedings but also the lodestar." *Molina-Martinez*, 578 U.S. at 200. "In most cases a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome." *Bridges*, 991 F.3d at 808 (quotation marks omitted). "[W]hen a district court incorrectly calculates the Guidelines range, [this Court] normally presume[s] the improperly calculated Guidelines range influenced the judge's choice of sentence, unless he says otherwise." *United States v. Rollins*, 836 F.3d 737, 743-44 (7th Cir. 2016) (en banc) (quotation marks and alterations omitted).

Here, because of the (incorrect) higher statutory maximum for Cherry's term of imprisonment, the district court erroneously calculated Cherry's Guidelines range to be 360 years to life, when it should have been no higher than 262-327 months. *See supra* at 6 (describing the calculations). The district court sentenced Cherry to 240 months in prison—a sizeable, 10-year downward departure from the artificially in-

flated range, but just 22 months below the correct range. A similar downward departure from the correct range would have resulted in a sentence of 142 months, nearly 8 years less than what Cherry received.

Nor does the district court's downward departure to a below-Guidelines sentence erase the prejudice from the district court's calculation of the erroneously high range. On similar facts in *Bridges*, this Court reversed the denial of Section 2255 relief where counsel failed to challenge the career-offender enhancement but the district court had similarly departed downward from "the erroneous range." 991 F.3d at 808-09. And on similar facts in *Rollins*, this Court held that a defendant suffered prejudice even where the defendant's sentence "remain[ed] below the correctly calculated range." 836 F.3d at 743.

This rule makes sense because the fact "[t]hat a district court may ultimately sentence a given defendant outside the Guidelines range does not deprive the Guidelines of force as the framework for sentencing." *Peugh v. United States*, 569 U.S. 530, 542 (2013). "Even if the sentencing judge sees a reason to vary from the Guidelines, if the judge uses the sentencing ranges as the beginning point to explain the decision to deviate from it, then the Guidelines are in a real sense the basis for the sentence." *Id.* (quotation marks and emphasis omitted).

Here, similar to *Rollins*, the district court's sentence was 22 months below the Guidelines range even without the Section 841(b) enhancement, due to the career-offender enhancement under the Sentencing Guidelines. *But see infra* at 21-26 (ex-

plaining why trial counsel should have also objected to the career-offender enhancement). Here, as in *Rollins*, nothing in the record indicates that the district court would have imposed the same sentence even with the correct—and substantially lower—Guidelines range. 836 F.3d at 743-44. At minimum, therefore, there is a reasonable probability that Cherry's prison sentence would have been lower if the district court had started from the correct range. *See Molina-Martinez*, 578 U.S. at 201 ("Where … the record is silent as to what the district court might have done had it considered the correct Guidelines range, the court's reliance on an incorrect range in most instances will suffice to show an effect on the defendant's substantial rights.").

#### 3. Without the Section 841(b) enhancement, Cherry potentially could have negotiated a plea agreement resulting in a lower sentence.

Counsel's failure to challenge the Section 841(b) enhancement independently prejudiced Cherry by denying him competent representation during plea negotiations. *See Anderson v. United States*, 94 F.4th 564, 581 (7th Cir. 2024) ("The right to effective representation extends, of course, to the plea-negotiation process."). "To establish prejudice in the plea-bargaining context, [a defendant] must show that the outcome of the plea process would have been different with competent advice." *Id.* (quotation marks omitted). Where a defendant proceeded to trial, he "must show that but for the ineffective advice of counsel there is a reasonable probability that the [favorable] plea offer would have been presented to the [district] court." *Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

Here, if Cherry had known his correct Sentencing Guidelines range, he would have been far more likely to plead guilty. Specifically, Cherry's offense level could have dropped by 3 additional levels for acceptance of responsibility, resulting in an offense level of 31 and a Guidelines range of 188 to 235 months, far lower than the range the district court used. *See* USSG § 3E1.1; *id.* ch. 5 pt. A (sentencing table). With that reduction, there is at least a reasonable probability that Cherry would have negotiated and entered a guilty plea resulting in a sentence below 240 months (i.e., a sentence within the Guidelines range with the Section 841(b) enhancement excluded and credit for acceptance of responsibility).

## II. Trial counsel was ineffective in failing to challenge the career-offender enhancement under the Sentencing Guidelines.

Cherry's counsel also failed to argue that Cherry was not a "career offender" under the Guidelines because he lacked two predicate convictions that qualified as a crime of violence or controlled-substance offense. *See* USSG § 4B1.1. For this reason, too, Cherry's trial counsel was ineffective, and he is entitled, at minimum, to an evidentiary hearing.

### A. Competent defense counsel would have considered challenging the use of Cherry's 2003 convictions for the career-offender enhancement.

As explained above, to support classifying Cherry as a "career offender" under the Guidelines, at least one of Cherry's 2003 Illinois convictions for (1) the manufacture or delivery of cocaine or (2) possession of a machine gun must have qualified as either a "crime of violence" or "controlled substance offense." *Supra* at 8-9; PSR at 12. Trial counsel should have argued that neither conviction qualified.

#### 1. The cocaine conviction

Cherry's counsel should have argued that his 2003 cocaine conviction did not qualify as a "controlled substance offense" under USSG § 4B1.1(a). This argument, like the argument that this conviction does not qualify as a "serious drug felony" under 21 U.S.C. §§ 841(b)(1)(B) and 851, turns on the categorical approach and the fact that the statute under which Cherry was convicted "defines cocaine to include its positional isomers, whereas the federal definition covers only cocaine's optical and geometric isomers." *Ruth*, 966 F.3d at 644; *see also Cross v. United States*, 892 F.3d 288, 300 (7th Cir. 2018) (noting that the Seventh Circuit has "taken the position that the categorical approach applies to the guidelines without eliciting any objection from the government").

To be sure, this Court held—three years *after* Cherry's sentencing—that an Illinois cocaine conviction *does* qualify as a "controlled substance" offense under the Sentencing Guidelines even though it does not qualify as a felony drug offense under Section 841(b)(1)(B). *Ruth*, 966 F.3d at 651-54. But at the time of Cherry's sentencing, *Ruth* had not yet been decided, "a circuit split exist[ed]" on the question whether "controlled substance[s]" in the Guidelines are limited to substances listed in the Controlled Substances Act, and "the weight of authority" would have favored Cherry. *Id.* at 653. Because these arguments were readily available to Cherry's counsel and could have reduced his Guidelines range by nearly 75%, counsel's failure to raise the argument fell below the standards required by the Sixth Amendment.

At the time of Cherry's sentencing, this Court had not addressed this question, but the Ninth Circuit, among others, had rejected the argument "that the term 'controlled substance' should mean any substance controlled by law" because that "position would undermine the reasoning underlying the categorical analysis in the first place, … as well as the purpose of the Sentencing Guidelines." *United States v. Leal-Vega*, 680 F.3d 1160, 1165-67 (9th Cir. 2012); *see also United States v. Sanchez-Garcia*, 642 F.3d 658, 661 (8th Cir. 2011); *United States v. Gomez-Alvarez*, 781 F.3d 787, 793 (5th Cir. 2015). "With modern methods of legal research, it would not have taken long" for effective counsel in 2017 to find the decisions from the Fifth, Eighth, and Ninth Circuits holding that convictions for drug offenses defined more broadly than the federal statute are not "controlled substance[s]" under the Guidelines. *Bridges*, 991 F.3d at 805.

**2. The machine-gun conviction**

The machine-gun conviction should not have qualified as a "crime of violence" either. At the time of Cherry's alleged drug offense in 2012, the conviction could have been a "crime of violence" only under the residual clause defining such a crime to include any offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." USSG § 4B1.2(a)(2) (2011). A conviction for possession of a machine gun could not qualify as a "crime of violence" under any other part of the definition because it lacks an element requiring the use or attempted use of physical force against another person. *Id.* Nor does it constitute "burglary of a dwelling, arson, or extortion," or "involve[] use of explosives." *Id.*

Four years before Cherry's sentencing, this Court held that a conviction for possession of a short-barreled shotgun does not constitute a "violent felony" under the residual clause in the Armed Career Criminal Act, which is identical to the residual clause in the 2011 Guidelines. *United States v. Miller*, 721 F.3d 435 (7th Cir. 2013); *compare* 18 U.S.C. § 924(e)(2)(B) (ACCA's residual clause), *with* USSG § 4B1.2(a)(2) (2011) (Guidelines' residual clause). "[I]n the ordinary case, the possession of a short-barreled shotgun does not create any potential risks of harm to another person because all that is involved is the knowing possession of a weapon," and therefore it is not a violent felony. *Miller*, 721 F.3d at 440.

Possession of a machine gun likewise does not constitute a "crime of violence" under the Guidelines' identically worded residual clause. The Application Notes state otherwise, providing that possession of a firearm described in 26 U.S.C. § 5845(a) qualifies as a "crime of violence" under the residual clause. USSG § 4B1.2, app. note 1 (2011); *see also* PSR at 12 (citing this application note). But in *Rollins*, this Court emphatically rejected the argument that a conviction for possession of an illegal firearm "counts as a predicate crime of violence based on the application note *alone*." 836 F.3d at 742 (emphasis in original). "[A]pplication note 1 is enforceable only as an interpretation of the residual clause in § 4B1.2(a)(2)" and "has no independent legal force." *Id.* at 743. Here, to the extent Application Note 1 purported to make the mere possession of a machine gun a "crime of violence," the Note impermissibly "contradict[ed] or extend[ed] [the] Guideline's text." *United States v. Nitzkin*, 37 F.4th 1290, 1291 (7th Cir. 2022).

Cherry's counsel could (and should) have made these arguments. Indeed, the year before Cherry's sentence was imposed, a defendant raised that argument before this Court and the Court held that a conviction for possession of a sawed-off shotgun did not qualify as a career-offender predicate, albeit on different grounds. *Rollins*, 836 F.3d at 741-42.[6] There is no reason Cherry's counsel could not have raised the argument here, and given the importance of this issue to Cherry's sentence it was unreasonable for counsel to fail to do so.

### B. Counsel's failure to object to the career-offender enhancement prejudiced Cherry.

The failure of counsel to object to Cherry's career-offender classification was prejudicial—the erroneous classification of Cherry as a "career offender" caused the bottom of his Guidelines range to nearly *quadruple* from 92-115 months to 360 months to life. *See* A561. His ultimate sentence of 240 months is more than double the high end of the Guidelines range without the enhancement.

The fact that this Court held—three years *after* Cherry's sentencing—that Illinois cocaine convictions qualify as "controlled substance offenses" under the Guidelines, *Ruth*, 966 F.3d at 651-54, does not eliminate the prejudice. *Ruth* had not yet been decided at the time of Cherry's sentencing, and several other courts of appeals had decided the question in Cherry's favor. *See supra* at 22-23. If Cherry's counsel

[6] In *Rollins*, this Court relied on an en banc decision released the same day in *United States v. Hurlburt*, 835 F.3d 715 (7th Cir. 2016), where the Court held that the residual clause in USSG § 4B1.1(a)(2) was void for vagueness. *Id.* at 725-26. That holding in *Hurlburt* was later abrogated by Supreme Court precedent. *See Daniels v. United States*, 939 F.3d 898, 902 (7th Cir. 2019) (citing *Beckles v. United States*, 580 U.S. 256, 267 (2017)).

had properly objected to his classification as a career offender under the Guidelines, there is a reasonable probability that the district court, this Court, or the Supreme Court would have recognized that Cherry should not have been sentenced as a career offender.

In *Elion v. United States*, this Court recently held that a petitioner could "show prejudice only if he should not have been sentenced as a career offender." 76 F.4th 620, 625 (7th Cir. 2023). But there the Court held that the petitioner should *not* have been sentenced as a career offender, and the Court therefore had no occasion to decide whether a petitioner in Cherry's circumstances can show prejudice by pointing to favorable out-of-circuit precedent at the time of his sentencing or the possibility of Supreme Court review given an acknowledged circuit split. *See id.* at 635. Here, even assuming the district court or this Court would have rejected a challenge to the career-offender enhancement based on the reasoning the Court later adopted in *Ruth*, Cherry would have had a reasonable probability of obtaining Supreme Court review and vacatur of his sentence given the circuit split. *See Guerrant v. United States*, 142 S. Ct. 640, 641 (2022) (Sotomayor, J., respecting the denial of certiorari) (noting "the resultant unresolved divisions among the Courts of Appeals can have direct and severe consequences for defendants' sentences").[7]

[7] Should this Court determine that Cherry was not prejudiced by counsel's failure to challenge the career-offender enhancement because of controlling circuit precedent in *Ruth*, Cherry respectfully preserves his right to petition for en banc review or certiorari on the question whether "controlled substance offenses" under the Guidelines include drug offenses that are categorically broader than those enumerated in the federal Controlled Substances Act.

## III. Counsel was ineffective in failing to challenge testimony concerning the confidential informant's out-of-court statements.

In addition to the sentencing errors, Cherry's trial and appellate counsel were constitutionally ineffective in failing to object to Agent Brazao's testimony concerning the confidential informant's out-of-court statements, including the informant's allegations that Cherry was an experienced drug dealer with whom the informant had engaged in drug transactions in the past.

### A. Trial counsel was ineffective in failing to raise objections under the Confrontation Clause or Federal Rule of Evidence 403.

"All lawyers that represent criminal defendants are expected to know the laws applicable to their client's defense." *Osagiede v. United States*, 543 F.3d 399, 409 (7th Cir. 2008) (quotation marks omitted). Thus, competent trial counsel would know that the Confrontation Clause entitles defendants to an opportunity to challenge the testimony against them "in the crucible of cross-examination." *Crawford v. Washington*, 541 U.S. 36, 61 (2004). Even for otherwise admissible testimonial statements, Federal Rule of Evidence 403 prohibits testimony "if its probative value is substantially outweighed" by the risk of unfair prejudice to the defendant. Fed. R. Evid. 403. Counsel's failure to raise these objections can rise to the level of ineffective assistance. *See, e.g.*, *Williams v. United States*, 268 F. App'x 563, 565 (9th Cir. 2008) ("*Crawford* clearly established that the admission of the … testimony violated the Confrontation Clause."); *Wright v. Burt*, 665 F. App'x 403, 408 (6th Cir. 2016) ("trial counsel was objectively unreasonable for failing to object" where "the Confrontation Clause violation was obvious").

Here, competent trial counsel would have raised Confrontation Clause and Rule 403 objections to Agent Brazao's testimony concerning the informant's statements that Cherry was a major drug dealer who arrived in the parking lot to buy a large quantity of cocaine. A255-58. Alarm bells should have started ringing for Cherry's trial counsel as soon as Agent Brazao began narrating the informant's accusatory out-of-court statements to the jury.

For example, Agent Brazao told the jury the informant had told him that, "[a]fter picking up the cocaine, he was supposed to deliver 13 kilograms to an individual he knew as Mo," that "[h]e's dealt with him in the past," that "Mo" was a "Black male, [who] drove a white Mercedes," that "he's been to [Mo's] residence in the past to do other transactions," and that "[t]hat's how they met." A255-56. In other words, the informant's statements accused Cherry (who the informant said he knew as "Mo") of being a high-level drug dealer who drove a white Mercedes, had engaged in drug transactions with the informant in the past, and wanted to purchase 13 kilograms of cocaine from the informant. The statements were made to law enforcement by a cooperating informant "'in anticipation of or with an eye toward a criminal prosecution'" and "for the purpose of helping bring to justice" an alleged drug dealer to whom the informant said he was planning to sell cocaine. *Jones v. Basinger*, 635 F.3d 1030, 1041 (7th Cir. 2011) (citation omitted). Thus, they "certainly qualifie[d] as testimonial." *Id.*

Prior to Cherry's trial, this Court had repeatedly held that testimony concerning similar statements by confidential informants was impermissible under the Confrontation Clause and Rule 403. For example, in *United States v. Williams*, this Court reversed a robbery conviction where an FBI agent testified that a confidential informant had pointed to the defendant as "a suspect in the robbery." 133 F.3d 1048, 1050 (7th Cir. 1998); *see also Jones*, 635 F.3d at 1037 (granting habeas relief where detective testified at trial about an informant's statements); *United States v. Silva*, 380 F.3d 1018, 1019 (7th Cir. 2004) (reversing conviction where a DEA agent testified about informant's statements). The "building blocks for a successful legal argument were already in place," confirming that the failure of Cherry's trial counsel to object was unreasonable. *Bridges*, 991 F.3d at 797-98.

Shortly before Agent Brazao relayed the informant's statements to the jury, the district court had concluded that some testimony concerning the informant's statements was admissible to explain the actions of law enforcement because questioning by Cherry's counsel opened the door to that topic. A249, 253. But "[c]ourts asked to admit such statements for supposed non-hearsay purposes must be on the alert for … misuse." *Jones*, 635 F.3d at 1046. "To allow testimonial repetition of a declarant's out-of-court charge that the defendant would engage or was engaged in specific criminality would seem to create too great a risk that th[e] dangers" of "'unfair prejudice, confusion of the issues, or misleading the jury'" "will actualize," and that "risk cannot be justified simply to set forth the background of the investigation."

*United States v. Mancillas*, 580 F.2d 1301, 1310 (7th Cir. 1978) (quoting Fed. R. Evid. 403).

Here, the full scope of Agent Brazao's testimony went much further than necessary to advance any legitimate purpose. *See Williams*, 133 F.3d at 1051 (finding "absolutely no reason" for a special agent to "testify about the substance of his conversation with the confidential informant … to explain the actions taken by the police in their investigation"). Agent Brazao could simply have testified—as he did—that agents "arrested [the informant] with 26 kilograms of cocaine," "retrieved the [informant's] Jetta," "searched the entire vehicle," and placed "sham kilograms [of cocaine] into the trap [compartment]" of the Jetta, and that the officers then instructed the informant to deliver the sham cocaine to a buyer at a public parking lot "for safety reasons." A255-57. There was no need for the government to go further and introduce the informant's statements that he was planning to sell 13 kilograms of cocaine to a black man he knew as "Mo," that the man drove a white Mercedes, or that the informant had engaged in previous drug transactions with him.

### B. Appellate counsel was ineffective in failing to raise this issue on appeal.

Cherry's appellate counsel was also ineffective in failing to challenge the admission of the informant's statements on appeal. If appellate counsel fails to make "a nonfrivolous claim that was both 'obvious' and 'clearly stronger' than the claim[s] that [s]he actually presented, [her] performance was deficient, unless [her] choice had

a strategic justification." *Ramirez v. Tegels*, 963 F.3d 604, 613 (7th Cir. 2020) (citation omitted) (holding that appellate counsel was deficient for failing to raise a Confrontation Clause challenge).

As explained above, the Confrontation Clause and Rule 403 arguments concerning Agent Brazao's testimony should have been obvious. And this argument would have been stronger than any of the challenges that Cherry's appellate counsel did raise, including the challenge to the search of Cherry's car and the government's failure to preserve and disclose photographic metadata that might have revealed that the drugs in Cherry's vehicle were not in plain view. *Cherry*, 920 F.3d at 1132-41.

### C. Trial and appellate counsel's failure to challenge this testimony was prejudicial.

The admission of the informant's out-of-court statements could have changed the outcome at trial, and Cherry's inability to cross-examine the informant was also prejudicial. A defendant can suffer prejudice from an out-of-court statement that served as "additional, but inadmissible, evidence of [the defendant's] guilt." *Jones*, 635 F.3d at 1052 (applying the harmless-error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993)). The question is not "whether the remaining evidence was legally sufficient to sustain a finding of guilt." *Jones*, 635 F.3d at 1053. Instead, the question is "'whether the error had substantial influence' in light of the entire record." *Id.* (citation omitted).

Here, Agent Brazao's testimony "conveyed to the jury 'the substance, indeed, the minutiae' of [the informant's] statement[s]," so "it is obvious that [Cherry] was prejudiced by the prosecution's 'unabashed use'" of the informant's assertion that

Cherry was a drug dealer. *Jones*, 635 F.3d at 1053 (citation omitted). Moreover, the informant's out-of-court statements gave the government the benefit of an additional witness to corroborate the testimony of other witnesses. For example, the informant's statements linked up with and corroborated Agent Brazao's testimony that Cherry drove a white Mercedes and that "Mo" was "Mr. Cherry's alias." A209-11, 257. The admission of the informant's out-of-court statements therefore encouraged the jury to resolve any doubts about the strength of the evidence against Cherry and in favor of conviction.

In addition to the informant's statements, the government offered other evidence, such as the drugs allegedly found in Cherry's car and Cherry's statement to law enforcement that he was returning 300 grams of low-quality heroin to the informant. A212-22, 282-94, 353-59. But that does not eliminate the prejudice caused by Agent Brazao's testimony relaying to the jury the informant's out-of-court statements accusing Cherry of being a high-level drug dealer. To hold otherwise would "ignore[] the significant prejudicial effect the error can have on a jury's ability to evaluate fairly the remaining evidence" and "offer[] prosecutors no real incentive to comply with the Constitution." *Jones*, 635 F.3d at 1053. Out-of-court statements that bolster the testimony of the government's other witnesses make it "much more likely that the jury would resolve any doubts about [those witnesses'] credibility in favor of a conviction." *Id.* at 1054; *see Williams*, 133 F.3d at 1053 (informant's out-of-court statements were prejudicial because the "inadmissible hearsay" "bolstered" the "evidence the government did have").

Worse, the introduction of the informant's allegations concerning Cherry could have "give[n] rise to an inference in the jurors' minds that because a confidential … informant identified" Cherry as an experienced drug dealer, "then it must be true." *Williams*, 133 F.3d at 1052. Yet the violation of Cherry's rights under the Confrontation Clause and Federal Rules of Evidence deprived him of any opportunity to effectively contest the informant's accusations.

The district court's limiting instruction could not fix the problem. *See* A506; *supra* at 5. "A jury is unlikely to follow an instruction given where the admission of the tip adds little to the context of the investigation or where the substance of the tip is overwhelmingly incriminating." *United States v. Lovelace*, 123 F.3d 650, 654 (7th Cir. 1997); *see also Jones*, 635 F.3d at 1055 ("a jury is unlikely to heed a limiting instruction that asks it to disregard a hearsay statement that is 'overwhelmingly incriminating'" (citation omitted)).

Moreover, if Cherry had the opportunity to cross-examine the informant, he could have asked the informant questions about his original encounter with the officers, the informant's motive to help the officers catch other suspected drug dealers, and the scope of the information the officers themselves knew from their own eyes, compared to information relayed to them by the informant. Cherry could have used that testimony to rebut the government's case against him by, for example, undermining the strength and credibility of the government's other testimony and evi-

dence. Thus, in addition to the harm caused by the out-of-court statements themselves, Cherry's inability to cross-examine the out-of-court witness who made those statements was independently prejudicial.

## Conclusion

For these reasons, the Court should reverse the district court's denial of Cherry's motion for relief under Section 2255 and remand with instructions to vacate his sentence and conviction. At minimum, the Court should reverse and remand for an evidentiary hearing.

Dated: August 14, 2024

Respectfully submitted,

*/s/ Matt Gregory*
Matt Gregory*
Brian C. McCarty
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
mgregory@gibsondunn.com
bmccarty@gibsondunn.com

*Appointed counsel for Petitioner-Appellant DeAndre Cherry*

* Counsel of record

**Certificate of Compliance With Type-Volume Limit,**
**Typeface Requirements, and Type-Style Requirements**

1. This document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

X this document contains 8,551 words, **or**

__this brief uses a monospaced typeface and contains [state the number of ] lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

X this document has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 12-point New Century Schoolbook LT font, **or**

__this document has been prepared in a monospaced typeface using [state name and version of word-processing program] with [state number of characters per inch and name of type style].

*/s/ Matt Gregory*
Matt Gregory

*Appointed counsel for Petitioner-Appellant DeAndre Cherry*

August 14, 2024

## Certificate Of Compliance

In accordance with Circuit Rule 30(d), I certify that all materials required by Circuit Rules 30(a) and (b) are included in the Required Short Appendix and the Supplemental Appendix.

Dated: August 14, 2024

*<u>/s/ Matt Gregory</u>*
Matt Gregory

**No. 21-2231**

# In the United States Court of Appeals for the Seventh Circuit

DeAndre Cherry,

*Petitioner – Appellant*,

v.

United States of America,

*Respondent – Appellee.*

On Appeal from the United States District Court
for the Northern District of Illinois
No. 1:20-cv-04752 – Hon. Ronald A. Guzman

## DeAndre Cherry's Statutory Addendum

Matt Gregory
Brian C. McCarty
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
mgregory@gibsondunn.com

*Appointed counsel for Petitioner – Appellant DeAndre Cherry*

## Table Of Contents

Page

21 U.S.C. § 841(b)(1)(B) (2016) ........ Add. 1

21 U.S.C. § 851 ........ Add. 2

United States Sentencing Commission Guidelines Manual (2011) (excerpted) ........ Add. 4

Section 4B1.1 ........ Add. 5

Section 4B1.2 ........ Add. 8

United States Sentencing Commission Guidelines Manual (2015) (excerpted) ........ Add. 11

Section 4B1.1 ........ Add. 12

Section 4B1.2 ........ Add. 15

Chapter 5 Part A ........ Add. 18

**21 U.S.C. § 841(b)(1)(B) (2016). Prohibited acts A**

**(b) Penalties**

Except as otherwise provided in section 849, 859, 860, or 861 of this title, any person who violates subsection (a) of this section shall be sentenced as follows:

* * *

[(1)](B) In the case of a violation of subsection (a) of this section involving—

(i) 100 grams or more of a mixture or substance containing a detectable amount of heroin;

(ii) 500 grams or more of a mixture or substance containing a detectable amount of—

(I) coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed;

(II) cocaine, its salts, optical and geometric isomers, and salts of isomers;

(III) ecgonine, its derivatives, their salts, isomers, and salts of isomers; or

(IV) any compound, mixture, or preparation which contains any quantity of any of the substances referred to in subclauses (I) through (III);

(iii) 28 grams or more of a mixture or substance described in clause (ii) which contains cocaine base;

(iv) 10 grams or more of phencyclidine (PCP) or 100 grams or more of a mixture or substance containing a detectable amount of phencyclidine (PCP);

(v) 1 gram or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD);

(vi) 40 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide or 10 grams or more of a mixture or substance containing a detectable amount of any analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide;

(vii) 100 kilograms or more of a mixture or substance containing a detectable amount of marihuana, or 100 or more marihuana plants regardless of weight; or

(viii) 5 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers;

such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years and if death or serious bodily injury results from the use of such substance shall be not less than 20 years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $5,000,000 if the defendant is an individual or $25,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18 or $8,000,000 if the defendant is an individual or $50,000,000 if the defendant is other than an individual, or both. Notwithstanding section 3583 of Title 18, any sentence imposed under this subparagraph shall, in the absence of such a prior conviction, include a term of supervised release of at least 4 years in addition to such term of imprisonment and shall, if there was such a prior conviction, include a term of supervised release of at least 8 years in addition to such term of imprisonment. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under this subparagraph. No person sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed therein.

## 21 U.S.C. § 851. Proceedings to establish prior convictions

### (a) Information filed by United States Attorney

(1) No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon. Upon a showing by the United States attorney that facts regarding prior convictions could not with due diligence be obtained prior to trial or before entry of a plea of guilty, the court may postpone the trial or the taking of the plea of guilty for a reasonable period for the purpose of obtaining such facts. Clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence.

(2) An information may not be filed under this section if the increased punishment which may be imposed is imprisonment for a term in excess of three years unless the person either waived or was afforded prosecution by indictment for the offense for which such increased punishment may be imposed.

### (b) Affirmation or denial of previous conviction

If the United States attorney files an information under this section, the court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has

been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

**(c) Denial; written response; hearing**

(1) If the person denies any allegation of the information of prior conviction, or claims that any conviction alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the United States attorney. The court shall hold a hearing to determine any issues raised by the response which would except the person from increased punishment. The failure of the United States attorney to include in the information the complete criminal record of the person or any facts in addition to the convictions to be relied upon shall not constitute grounds for invalidating the notice given in the information required by subsection (a)(1). The hearing shall be before the court without a jury and either party may introduce evidence. Except as otherwise provided in paragraph (2) of this subsection, the United States attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. At the request of either party, the court shall enter findings of fact and conclusions of law.

(2) A person claiming that a conviction alleged in the information was obtained in violation of the Constitution of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof by a preponderance of the evidence on any issue of fact raised by the response. Any challenge to a prior conviction, not raised by response to the information before an increased sentence is imposed in reliance thereon, shall be waived unless good cause be shown for failure to make a timely challenge.

**(d) Imposition of sentence**

(1) If the person files no response to the information, or if the court determines, after hearing, that the person is subject to increased punishment by reason of prior convictions, the court shall proceed to impose sentence upon him as provided by this part.

(2) If the court determines that the person has not been convicted as alleged in the information, that a conviction alleged in the information is invalid, or that the person is otherwise not subject to an increased sentence as a matter of law, the court shall, at the request of the United States attorney, postpone sentence to allow an appeal from that determination. If no such request is made, the court shall impose sentence as provided by this part. The person may appeal from an order postponing sentence as if sentence had been pronounced and a final judgment of conviction entered.

**(e) Statute of limitations**

No person who stands convicted of an offense under this part may challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction.

# UNITED STATES SENTENCING COMMISSION
# GUIDELINES MANUAL

**PATTI B. SARIS**
Chair

**WILLIAM B. CARR, JR.**
Vice Chair

**KETANJI B. JACKSON**
Vice Chair

**RICARDO H. HINOJOSA**
Commissioner

**BERYL A. HOWELL**
Commissioner

**DABNEY L. FRIEDRICH**
Commissioner

**JONATHAN J. WROBLEWSKI**
Commissioner, Ex-officio

**ISAAC FULWOOD, JR.**
Commissioner, Ex-officio

This document contains the text of the *Guidelines Manual* incorporating amendments effective January 15, 1988; June 15, 1988; October 15, 1988; November 1, 1989; November 1, 1990; November 1, 1991; November 27, 1991; November 1, 1992; November 1, 1993; September 23, 1994; November 1, 1994; November 1, 1995; November 1, 1996; May 1, 1997; November 1, 1997; November 1, 1998; May 1, 2000; November 1, 2000; December 16, 2000; May 1, 2001; November 1, 2001; November 1, 2002; January 25, 2003; April 30, 2003; October 27, 2003; November 1, 2003; November 5, 2003; November 1, 2004; October 24, 2005; November 1, 2005; March 27, 2006; September 12, 2006; November 1, 2006; May 1, 2007; November 1, 2007; February 6, 2008; March 3, 2008; May 1, 2008; November 1, 2008; November 1, 2009; November 1, 2010; and November 1, 2011.

## PART B - CAREER OFFENDERS AND CRIMINAL LIVELIHOOD

### §4B1.1. Career Offender

(a) A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

(b) Except as provided in subsection (c), if the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply. A career offender's criminal history category in every case under this subsection shall be Category VI.

| | Offense Statutory Maximum | Offense Level* |
|---|---|---|
| (1) | Life | **37** |
| (2) | 25 years or more | **34** |
| (3) | 20 years or more, but less than 25 years | **32** |
| (4) | 15 years or more, but less than 20 years | **29** |
| (5) | 10 years or more, but less than 15 years | **24** |
| (6) | 5 years or more, but less than 10 years | **17** |
| (7) | More than 1 year, but less than 5 years | **12**. |

*If an adjustment from §3E1.1 (Acceptance of Responsibility) applies, decrease the offense level by the number of levels corresponding to that adjustment.

(c) If the defendant is convicted of 18 U.S.C. § 924(c) or § 929(a), and the defendant is determined to be a career offender under subsection (a), the applicable guideline range shall be determined as follows:

(1) If the only count of conviction is 18 U.S.C. § 924(c) or § 929(a), the applicable guideline range shall be determined using the table in subsection (c)(3).

(2) In the case of multiple counts of conviction in which at least one of the counts is a conviction other than a conviction for 18 U.S.C. § 924(c) or § 929(a), the guideline range shall be the greater of—

(A) the guideline range that results by adding the mandatory minimum consecutive penalty required by the 18 U.S.C. § 924(c) or § 929(a) count(s) to the minimum and the maximum of the otherwise applicable guideline range determined for the count(s) of conviction other than the 18 U.S.C. § 924(c) or § 929(a) count(s); and

(B) the guideline range determined using the table in subsection (c)(3).

(3) Career Offender Table for 18 U.S.C. § 924(c) or § 929(a) Offenders

| §3E1.1 Reduction | Guideline Range for the 18 U.S.C. § 924(c) or § 929(a) Count(s) |
|---|---|
| No reduction | 360-life |
| 2-level reduction | 292-365 |
| 3-level reduction | 262-327. |

## Commentary

*Application Notes:*

1. *"Crime of violence," "controlled substance offense," and "two prior felony convictions" are defined in §4B1.2.*

2. *"Offense Statutory Maximum," for the purposes of this guideline, refers to the maximum term of imprisonment authorized for the offense of conviction that is a crime of violence or controlled substance offense, including any increase in that maximum term under a sentencing enhancement provision that applies because of the defendant's prior criminal record (such sentencing enhancement provisions are contained, for example, in 21 U.S.C. § 841(b)(1)(A), (B), (C), and (D)). For example, in a case in which the statutory maximum term of imprisonment under 21 U.S.C. § 841(b)(1)(C) is increased from twenty years to thirty years because the defendant has one or more qualifying prior drug convictions, the "Offense Statutory Maximum" for that defendant for the purposes of this guideline is thirty years and not twenty years. If more than one count of conviction is of a crime of violence or controlled substance offense, use the maximum authorized term of imprisonment for the count that has the greatest offense statutory maximum.*

3. *Application of Subsection (c).—*

   (A) *In General.—Subsection (c) applies in any case in which the defendant (i) was convicted of violating 18 U.S.C. § 924(c) or § 929(a); and (ii) as a result of that conviction (alone or in addition to another offense of conviction), is determined to be a career offender under §4B1.1(a).*

   (B) *Subsection (c)(2).—To determine the greater guideline range under subsection (c)(2), the court shall use the guideline range with the highest minimum term of imprisonment.*

   (C) *"Otherwise Applicable Guideline Range".—For purposes of subsection (c)(2)(A), "otherwise applicable guideline range" for the count(s) of conviction other than the 18 U.S.C. § 924(c) or 18 U.S.C. § 929(a) count(s) is determined as follows:*

      (i) *If the count(s) of conviction other than the 18 U.S.C. § 924(c) or 18 U.S.C. § 929(a) count(s) does not qualify the defendant as a career offender, the*

*otherwise applicable guideline range for that count(s) is the guideline range determined using: (I) the Chapter Two and Three offense level for that count(s); and (II) the appropriate criminal history category determined under §§4A1.1 (Criminal History Category) and 4A1.2 (Definitions and Instructions for Computing Criminal History).*

*(ii) If the count(s) of conviction other than the 18 U.S.C. § 924(c) or 18 U.S.C. § 929(a) count(s) qualifies the defendant as a career offender, the otherwise applicable guideline range for that count(s) is the guideline range determined for that count(s) under §4B1.1(a) and (b).*

*(D) Imposition of Consecutive Term of Imprisonment.—In a case involving multiple counts, the sentence shall be imposed according to the rules in subsection (e) of §5G1.2 (Sentencing on Multiple Counts of Conviction).*

*(E) Example.—The following example illustrates the application of subsection (c)(2) in a multiple count situation:*

*The defendant is convicted of one count of violating 18 U.S.C. § 924(c) for possessing a firearm in furtherance of a drug trafficking offense (5 year mandatory minimum), and one count of violating 21 U.S.C. § 841(b)(1)(B) (5 year mandatory minimum, 40 year statutory maximum). Applying subsection (c)(2)(A), the court determines that the drug count (without regard to the 18 U.S.C. § 924(c) count) qualifies the defendant as a career offender under §4B1.1(a). Under §4B1.1(a), the otherwise applicable guideline range for the drug count is 188-235 months (using offense level 34 (because the statutory maximum for the drug count is 40 years), minus 3 levels for acceptance of responsibility, and criminal history category VI). The court adds 60 months (the minimum required by 18 U.S.C. § 924(c)) to the minimum and the maximum of that range, resulting in a guideline range of 248-295 months. Applying subsection (c)(2)(B), the court then determines the career offender guideline range from the table in subsection (c)(3) is 262-327 months. The range with the greatest minimum, 262-327 months, is used to impose the sentence in accordance with §5G1.2(e).*

*Background: Section 994(h) of Title 28, United States Code, mandates that the Commission assure that certain "career" offenders receive a sentence of imprisonment "at or near the maximum term authorized." Section 4B1.1 implements this directive, with the definition of a career offender tracking in large part the criteria set forth in 28 U.S.C. § 994(h). However, in accord with its general guideline promulgation authority under 28 U.S.C. § 994(a)-(f), and its amendment authority under 28 U.S.C. § 994(o) and (p), the Commission has modified this definition in several respects to focus more precisely on the class of recidivist offenders for whom a lengthy term of imprisonment is appropriate and to avoid "unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct . . . ." 28 U.S.C. § 991(b)(1)(B). The Commission's refinement of this definition over time is consistent with Congress's choice of a directive to the Commission rather than a mandatory minimum sentencing statute ("The [Senate Judiciary] Committee believes that such a directive to the Commission will be more effective; the guidelines development process can assure consistent and rational implementation for the Committee's view that substantial prison terms should be imposed on repeat violent offenders and repeat drug traffickers." S. Rep. No. 225, 98th Cong., 1st Sess. 175 (1983)).*

*Subsection (c) provides rules for determining the sentence for career offenders who have been convicted of 18 U.S.C. § 924(c) or § 929(a). The Career Offender Table in subsection (c)(3) provides a sentence at or near the statutory maximum for these offenders by using guideline ranges that correspond to criminal history category VI and offense level 37 (assuming §3E.1.1 (Acceptance of Responsibility) does not apply), offense level 35 (assuming a 2-level reduction under §3E.1.1 applies), and offense level 34 (assuming a 3-level reduction under §3E1.1 applies).*

Historical Note: Effective November 1, 1987. Amended effective January 15, 1988 (see Appendix C, amendments 47 and 48); November 1, 1989 (see Appendix C, amendments 266 and 267); November 1, 1992 (see Appendix C, amendment 459); November 1, 1994 (see Appendix C, amendment 506); November 1, 1995 (see Appendix C, amendment 528); November 1, 1997 (see Appendix C, amendments 546 and 567); November 1, 2002 (see Appendix C, amendment 642); November 1, 2011 (see Appendix C, amendment 758).

## §4B1.2. Definitions of Terms Used in Section 4B1.1

(a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that --

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

(b) The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

(c) The term "two prior felony convictions" means (1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense (i.e., two felony convictions of a crime of violence, two felony convictions of a controlled substance offense, or one felony conviction of a crime of violence and one felony conviction of a controlled substance offense), and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of §4A1.1(a), (b), or (c). The date that a defendant sustained a conviction shall be the date that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of nolo contendere.

*Commentary*

*Application Notes:*

1. *For purposes of this guideline—*

*"Crime of violence" and "controlled substance offense" include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses.*

*"Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.*

*"Crime of violence" does not include the offense of unlawful possession of a firearm by a felon, unless the possession was of a firearm described in 26 U.S.C. § 5845(a). Where the instant offense of conviction is the unlawful possession of a firearm by a felon, §2K2.1 (Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition; Prohibited Transactions Involving Firearms or Ammunition) provides an increase in offense level if the defendant had one or more prior felony convictions for a crime of violence or controlled substance offense; and, if the defendant is sentenced under the provisions of 18 U.S.C. § 924(e), §4B1.4 (Armed Career Criminal) will apply.*

*Unlawfully possessing a listed chemical with intent to manufacture a controlled substance (21 U.S.C. § 841(c)(1)) is a "controlled substance offense."*

*Unlawfully possessing a firearm described in 26 U.S.C. § 5845(a) (e.g., a sawed-off shotgun or sawed-off rifle, silencer, bomb, or machine gun) is a "crime of violence".*

*Unlawfully possessing a prohibited flask or equipment with intent to manufacture a controlled substance (21 U.S.C. § 843(a)(6)) is a "controlled substance offense."*

*Maintaining any place for the purpose of facilitating a drug offense (21 U.S.C. § 856) is a "controlled substance offense" if the offense of conviction established that the underlying offense (the offense facilitated) was a "controlled substance offense."*

*Using a communications facility in committing, causing, or facilitating a drug offense (21 U.S.C. § 843(b)) is a "controlled substance offense" if the offense of conviction established that the underlying offense (the offense committed, caused, or facilitated) was a "controlled substance offense."*

*A violation of 18 U.S.C. § 924(c) or § 929(a) is a "crime of violence" or a "controlled substance offense" if the offense of conviction established that the underlying offense was a "crime of violence" or a "controlled substance offense". (Note that in the case of a prior 18 U.S.C. § 924(c) or § 929(a) conviction, if the defendant also was convicted of the underlying offense, the sentences for the two prior convictions will be counted as a single sentence under §4A1.2 (Definitions and Instructions for Computing Criminal History).)*

*"Prior felony conviction" means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence*

*imposed. A conviction for an offense committed at age eighteen or older is an adult conviction. A conviction for an offense committed prior to age eighteen is an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted (e.g., a federal conviction for an offense committed prior to the defendant's eighteenth birthday is an adult conviction if the defendant was expressly proceeded against as an adult).*

2. *Section 4B1.1 (Career Offender) expressly provides that the instant and prior offenses must be crimes of violence or controlled substance offenses of which the defendant was convicted. Therefore, in determining whether an offense is a crime of violence or controlled substance for the purposes of §4B1.1 (Career Offender), the offense of conviction (i.e., the conduct of which the defendant was convicted) is the focus of inquiry.*

3. *The provisions of §4A1.2 (Definitions and Instructions for Computing Criminal History) are applicable to the counting of convictions under §4B1.1.*

Historical Note: Effective November 1, 1987. Amended effective January 15, 1988 (see Appendix C, amendment 49); November 1, 1989 (see Appendix C, amendment 268); November 1, 1991 (see Appendix C, amendment 433); November 1, 1992 (see Appendix C, amendment 461); November 1, 1995 (see Appendix C, amendment 528); November 1, 1997 (see Appendix C, amendments 546 and 568); November 1, 2000 (see Appendix C, amendment 600); November 1, 2002 (see Appendix C, amendments 642 and 646); November 1, 2004 (see Appendix C, amendment 674); November 1, 2007 (see Appendix C, amendment 709); November 1, 2009 (see Appendix C, amendment 736).

## §4B1.3. Criminal Livelihood

If the defendant committed an offense as part of a pattern of criminal conduct engaged in as a livelihood, his offense level shall be not less than **13**, unless §3E1.1 (Acceptance of Responsibility) applies, in which event his offense level shall be not less than **11**.

### *Commentary*

*Application Notes:*

1. *"Pattern of criminal conduct" means planned criminal acts occurring over a substantial period of time. Such acts may involve a single course of conduct or independent offenses.*

2. *"Engaged in as a livelihood" means that (A) the defendant derived income from the pattern of criminal conduct that in any twelve-month period exceeded 2,000 times the then existing hourly minimum wage under federal law; and (B) the totality of circumstances shows that such criminal conduct was the defendant's primary occupation in that twelve-month period (e.g., the defendant engaged in criminal conduct rather than regular, legitimate employment; or the defendant's legitimate employment was merely a front for the defendant's criminal conduct).*

*Background: Section 4B1.3 implements 28 U.S.C. § 994(i)(2), which directs the Commission to ensure that the guidelines specify a "substantial term of imprisonment" for a defendant who*

# UNITED STATES SENTENCING COMMISSION
# **GUIDELINES MANUAL**


**PATTI B. SARIS**
Chair

**CHARLES R. BREYER**
Vice Chair

**DABNEY L. FRIEDRICH**
Commissioner

**RACHEL E. BARKOW**
Commissioner

**WILLIAM H. PRYOR, JR.**
Commissioner

**JONATHAN J. WROBLEWSKI**
Commissioner, *Ex-officio*

**J. PATRICIA WILSON SMOOT**
Commissioner, *Ex-officio*


This document contains the text of the *Guidelines Manual* incorporating amendments effective January 15, 1988; June 15, 1988; October 15, 1988; November 1, 1989; November 1, 1990; November 1, 1991; November 27, 1991; November 1, 1992; November 1, 1993; September 23, 1994; November 1, 1994; November 1, 1995; November 1, 1996; May 1, 1997; November 1, 1997; November 1, 1998; May 1, 2000; November 1, 2000; December 16, 2000; May 1, 2001; November 1, 2001; November 1, 2002; January 25, 2003; April 30, 2003; October 27, 2003; November 1, 2003; November 5, 2003; November 1, 2004; October 24, 2005; November 1, 2005; March 27, 2006; September 12, 2006; November 1, 2006; May 1, 2007; November 1, 2007; February 6, 2008; March 3, 2008; May 1, 2008; November 1, 2008; November 1, 2009; November 1, 2010; November 1, 2011; November 1, 2012; November 1, 2013; November 1, 2014; and November 1, 2015.

## PART B - CAREER OFFENDERS AND CRIMINAL LIVELIHOOD

### §4B1.1. Career Offender

(a) A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

(b) Except as provided in subsection (c), if the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply. A career offender's criminal history category in every case under this subsection shall be Category VI.

| Offense Statutory Maximum | Offense Level* |
|---|---|
| (1) Life | **37** |
| (2) 25 years or more | **34** |
| (3) 20 years or more, but less than 25 years | **32** |
| (4) 15 years or more, but less than 20 years | **29** |
| (5) 10 years or more, but less than 15 years | **24** |
| (6) 5 years or more, but less than 10 years | **17** |
| (7) More than 1 year, but less than 5 years | **12**. |

*If an adjustment from §3E1.1 (Acceptance of Responsibility) applies, decrease the offense level by the number of levels corresponding to that adjustment.

(c) If the defendant is convicted of 18 U.S.C. § 924(c) or § 929(a), and the defendant is determined to be a career offender under subsection (a), the applicable guideline range shall be determined as follows:

(1) If the only count of conviction is 18 U.S.C. § 924(c) or § 929(a), the applicable guideline range shall be determined using the table in subsection (c)(3).

(2) In the case of multiple counts of conviction in which at least one of the counts is a conviction other than a conviction for 18 U.S.C. § 924(c) or § 929(a), the guideline range shall be the greater of—

(A) the guideline range that results by adding the mandatory minimum consecutive penalty required by the 18 U.S.C. § 924(c) or § 929(a) count(s) to the minimum and the maximum of the otherwise applicable guideline range determined for the count(s) of conviction other than the 18 U.S.C. § 924(c) or § 929(a) count(s); and

(B) the guideline range determined using the table in subsection (c)(3).

(3) Career Offender Table for 18 U.S.C. § 924(c) or § 929(a) Offenders

| §3E1.1 Reduction | Guideline Range for the 18 U.S.C. § 924(c) or § 929(a) Count(s) |
|---|---|
| No reduction | 360-life |
| 2-level reduction | 292-365 |
| 3-level reduction | 262-327. |

*Commentary*

*Application Notes:*

1. *"Crime of violence," "controlled substance offense," and "two prior felony convictions" are defined in §4B1.2.*

2. *"Offense Statutory Maximum," for the purposes of this guideline, refers to the maximum term of imprisonment authorized for the offense of conviction that is a crime of violence or controlled substance offense, including any increase in that maximum term under a sentencing enhancement provision that applies because of the defendant's prior criminal record (such sentencing enhancement provisions are contained, for example, in 21 U.S.C. § 841(b)(1)(A), (B), (C), and (D)). For example, in a case in which the statutory maximum term of imprisonment under 21 U.S.C. § 841(b)(1)(C) is increased from twenty years to thirty years because the defendant has one or more qualifying prior drug convictions, the "Offense Statutory Maximum" for that defendant for the purposes of this guideline is thirty years and not twenty years. If more than one count of conviction is of a crime of violence or controlled substance offense, use the maximum authorized term of imprisonment for the count that has the greatest offense statutory maximum.*

3. *Application of Subsection (c).—*

   *(A) In General.—Subsection (c) applies in any case in which the defendant (i) was convicted of violating 18 U.S.C. § 924(c) or § 929(a); and (ii) as a result of that conviction (alone or in addition to another offense of conviction), is determined to be a career offender under §4B1.1(a).*

   *(B) Subsection (c)(2).—To determine the greater guideline range under subsection (c)(2), the court shall use the guideline range with the highest minimum term of imprisonment.*

   *(C) "Otherwise Applicable Guideline Range".—For purposes of subsection (c)(2)(A), "otherwise applicable guideline range" for the count(s) of conviction other than the 18 U.S.C. § 924(c) or 18 U.S.C. § 929(a) count(s) is determined as follows:*

      *(i) If the count(s) of conviction other than the 18 U.S.C. § 924(c) or 18 U.S.C. § 929(a) count(s) does not qualify the defendant as a career offender, the otherwise applicable guideline range for that count(s) is the guideline range determined using: (I) the Chapter Two and Three offense level for that count(s); and (II) the appropriate criminal history category determined under §§4A1.1 (Criminal History Category) and 4A1.2 (Definitions and Instructions for Computing Criminal History).*

*(ii) If the count(s) of conviction other than the 18 U.S.C. § 924(c) or 18 U.S.C. § 929(a) count(s) qualifies the defendant as a career offender, the otherwise applicable guideline range for that count(s) is the guideline range determined for that count(s) under §4B1.1(a) and (b).*

*(D) <u>Imposition of Consecutive Term of Imprisonment</u>.—In a case involving multiple counts, the sentence shall be imposed according to the rules in subsection (e) of §5G1.2 (Sentencing on Multiple Counts of Conviction).*

*(E) <u>Example</u>.—The following example illustrates the application of subsection (c)(2) in a multiple count situation:*

*The defendant is convicted of one count of violating 18 U.S.C. § 924(c) for possessing a firearm in furtherance of a drug trafficking offense (5 year mandatory minimum), and one count of violating 21 U.S.C. § 841(b)(1)(B) (5 year mandatory minimum, 40 year statutory maximum). Applying subsection (c)(2)(A), the court determines that the drug count (without regard to the 18 U.S.C. § 924(c) count) qualifies the defendant as a career offender under §4B1.1(a). Under §4B1.1(a), the otherwise applicable guideline range for the drug count is 188-235 months (using offense level 34 (because the statutory maximum for the drug count is 40 years), minus 3 levels for acceptance of responsibility, and criminal history category VI). The court adds 60 months (the minimum required by 18 U.S.C. § 924(c)) to the minimum and the maximum of that range, resulting in a guideline range of 248-295 months. Applying subsection (c)(2)(B), the court then determines the career offender guideline range from the table in subsection (c)(3) is 262-327 months. The range with the greatest minimum, 262-327 months, is used to impose the sentence in accordance with §5G1.2(e).*

*<u>Background</u>: Section 994(h) of Title 28, United States Code, mandates that the Commission assure that certain "career" offenders receive a sentence of imprisonment "at or near the maximum term authorized." Section 4B1.1 implements this directive, with the definition of a career offender tracking in large part the criteria set forth in 28 U.S.C. § 994(h). However, in accord with its general guideline promulgation authority under 28 U.S.C. § 994(a)-(f), and its amendment authority under 28 U.S.C. § 994(o) and (p), the Commission has modified this definition in several respects to focus more precisely on the class of recidivist offenders for whom a lengthy term of imprisonment is appropriate and to avoid "unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct . . . ." 28 U.S.C. § 991(b)(1)(B). The Commission's refinement of this definition over time is consistent with Congress's choice of a directive to the Commission rather than a mandatory minimum sentencing statute ("The [Senate Judiciary] Committee believes that such a directive to the Commission will be more effective; the guidelines development process can assure consistent and rational implementation for the Committee's view that substantial prison terms should be imposed on repeat violent offenders and repeat drug traffickers." S. Rep. No. 225, 98th Cong., 1st Sess. 175 (1983)).*

*Subsection (c) provides rules for determining the sentence for career offenders who have been convicted of 18 U.S.C. § 924(c) or § 929(a). The Career Offender Table in subsection (c)(3) provides a sentence at or near the statutory maximum for these offenders by using guideline ranges that correspond to criminal history category VI and offense level 37 (assuming §3E.1.1 (Acceptance of Responsibility) does not apply), offense level 35 (assuming a 2-level reduction under §3E.1.1 applies), and offense level 34 (assuming a 3-level reduction under §3E1.1 applies).*

Historical Note: Effective November 1, 1987. Amended effective January 15, 1988 (see Appendix C, amendments 47 and 48); November 1, 1989 (see Appendix C, amendments 266 and 267); November 1, 1992 (see Appendix C, amendment 459); November 1, 1994 (see Appendix C, amendment 506); November 1, 1995 (see Appendix C, amendment 528); November 1, 1997 (see Appendix C, amendments 546 and 567); November 1, 2002 (see Appendix C, amendment 642); November 1, 2011 (see Appendix C, amendment 758).

## §4B1.2. Definitions of Terms Used in Section 4B1.1

(a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

(b) The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

(c) The term "two prior felony convictions" means (1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense (i.e., two felony convictions of a crime of violence, two felony convictions of a controlled substance offense, or one felony conviction of a crime of violence and one felony conviction of a controlled substance offense), and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of §4A1.1(a), (b), or (c). The date that a defendant sustained a conviction shall be the date that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of nolo contendere.

*Commentary*

*Application Notes:*

1. *For purposes of this guideline—*

*"Crime of violence" and "controlled substance offense" include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses.*

*"Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the*

*defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.*

*"Crime of violence" does not include the offense of unlawful possession of a firearm by a felon, unless the possession was of a firearm described in 26 U.S.C. § 5845(a). Where the instant offense of conviction is the unlawful possession of a firearm by a felon, §2K2.1 (Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition; Prohibited Transactions Involving Firearms or Ammunition) provides an increase in offense level if the defendant had one or more prior felony convictions for a crime of violence or controlled substance offense; and, if the defendant is sentenced under the provisions of 18 U.S.C. § 924(e), §4B1.4 (Armed Career Criminal) will apply.*

*Unlawfully possessing a listed chemical with intent to manufacture a controlled substance (21 U.S.C. § 841(c)(1)) is a "controlled substance offense."*

*Unlawfully possessing a firearm described in 26 U.S.C. § 5845(a) (e.g., a sawed-off shotgun or sawed-off rifle, silencer, bomb, or machine gun) is a "crime of violence".*

*Unlawfully possessing a prohibited flask or equipment with intent to manufacture a controlled substance (21 U.S.C. § 843(a)(6)) is a "controlled substance offense."*

*Maintaining any place for the purpose of facilitating a drug offense (21 U.S.C. § 856) is a "controlled substance offense" if the offense of conviction established that the underlying offense (the offense facilitated) was a "controlled substance offense."*

*Using a communications facility in committing, causing, or facilitating a drug offense (21 U.S.C. § 843(b)) is a "controlled substance offense" if the offense of conviction established that the underlying offense (the offense committed, caused, or facilitated) was a "controlled substance offense."*

*A violation of 18 U.S.C. § 924(c) or § 929(a) is a "crime of violence" or a "controlled substance offense" if the offense of conviction established that the underlying offense was a "crime of violence" or a "controlled substance offense". (Note that in the case of a prior 18 U.S.C. § 924(c) or § 929(a) conviction, if the defendant also was convicted of the underlying offense, the sentences for the two prior convictions will be treated as a single sentence under §4A1.2 (Definitions and Instructions for Computing Criminal History).)*

*"Prior felony conviction" means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed. A conviction for an offense committed at age eighteen or older is an adult conviction. A conviction for an offense committed prior to age eighteen is an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted (e.g., a federal conviction for an offense committed prior to the defendant's eighteenth birthday is an adult conviction if the defendant was expressly proceeded against as an adult).*

2. *Section 4B1.1 (Career Offender) expressly provides that the instant and prior offenses must be crimes of violence or controlled substance offenses of which the defendant was convicted.*

*Therefore, in determining whether an offense is a crime of violence or controlled substance for the purposes of §4B1.1 (Career Offender), the offense of conviction (i.e., the conduct of which the defendant was convicted) is the focus of inquiry.*

3. *The provisions of §4A1.2 (Definitions and Instructions for Computing Criminal History) are applicable to the counting of convictions under §4B1.1.*

Historical Note: Effective November 1, 1987. Amended effective January 15, 1988 (see Appendix C, amendment 49); November 1, 1989 (see Appendix C, amendment 268); November 1, 1991 (see Appendix C, amendment 433); November 1, 1992 (see Appendix C, amendment 461); November 1, 1995 (see Appendix C, amendment 528); November 1, 1997 (see Appendix C, amendments 546 and 568); November 1, 2000 (see Appendix C, amendment 600); November 1, 2002 (see Appendix C, amendments 642 and 646); November 1, 2004 (see Appendix C, amendment 674); November 1, 2007 (see Appendix C, amendment 709); November 1, 2009 (see Appendix C, amendment 736); November 1, 2015 (see Appendix C, amendment 795).

## §4B1.3. Criminal Livelihood

If the defendant committed an offense as part of a pattern of criminal conduct engaged in as a livelihood, his offense level shall be not less than **13**, unless §3E1.1 (Acceptance of Responsibility) applies, in which event his offense level shall be not less than **11**.

*Commentary*

*Application Notes:*

1. *"Pattern of criminal conduct" means planned criminal acts occurring over a substantial period of time. Such acts may involve a single course of conduct or independent offenses.*

2. *"Engaged in as a livelihood" means that (A) the defendant derived income from the pattern of criminal conduct that in any twelve-month period exceeded 2,000 times the then existing hourly minimum wage under federal law; and (B) the totality of circumstances shows that such criminal conduct was the defendant's primary occupation in that twelve-month period (e.g., the defendant engaged in criminal conduct rather than regular, legitimate employment; or the defendant's legitimate employment was merely a front for the defendant's criminal conduct).*

*Background: Section 4B1.3 implements 28 U.S.C. § 994(i)(2), which directs the Commission to ensure that the guidelines specify a "substantial term of imprisonment" for a defendant who committed an offense as part of a pattern of criminal conduct from which the defendant derived a substantial portion of the defendant's income.*

Historical Note: Effective November 1, 1987. Amended effective June 15, 1988 (see Appendix C, amendment 50); November 1, 1989 (see Appendix C, amendment 269); November 1, 1990 (see Appendix C, amendment 354); November 1, 2010 (see Appendix C, amendment 747).

## §4B1.4. Armed Career Criminal

(a) A defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal.

# SENTENCING TABLE
**(in months of imprisonment)**

| | | Criminal History Category (Criminal History Points) | | | | | |
|---|---|---|---|---|---|---|---|
| | **Offense Level** | **I (0 or 1)** | **II (2 or 3)** | **III (4, 5, 6)** | **IV (7, 8, 9)** | **V (10, 11, 12)** | **VI (13 or more)** |
| | **1** | 0-6 | 0-6 | 0-6 | 0-6 | 0-6 | 0-6 |
| | **2** | 0-6 | 0-6 | 0-6 | 0-6 | 0-6 | 1-7 |
| | **3** | 0-6 | 0-6 | 0-6 | 0-6 | 2-8 | 3-9 |
| | **4** | 0-6 | 0-6 | 0-6 | 2-8 | 4-10 | 6-12 |
| **Zone A** | **5** | 0-6 | 0-6 | 1-7 | 4-10 | 6-12 | 9-15 |
| | **6** | 0-6 | 1-7 | 2-8 | 6-12 | 9-15 | 12-18 |
| | **7** | 0-6 | 2-8 | 4-10 | 8-14 | 12-18 | 15-21 |
| | **8** | 0-6 | 4-10 | 6-12 | 10-16 | 15-21 | 18-24 |
| | **9** | 4-10 | 6-12 | 8-14 | 12-18 | 18-24 | 21-27 |
| **Zone B** | **10** | 6-12 | 8-14 | 10-16 | 15-21 | 21-27 | 24-30 |
| | **11** | 8-14 | 10-16 | 12-18 | 18-24 | 24-30 | 27-33 |
| | **12** | 10-16 | 12-18 | 15-21 | 21-27 | 27-33 | 30-37 |
| **Zone C** | **13** | 12-18 | 15-21 | 18-24 | 24-30 | 30-37 | 33-41 |
| | **14** | 15-21 | 18-24 | 21-27 | 27-33 | 33-41 | 37-46 |
| | **15** | 18-24 | 21-27 | 24-30 | 30-37 | 37-46 | 41-51 |
| | **16** | 21-27 | 24-30 | 27-33 | 33-41 | 41-51 | 46-57 |
| | **17** | 24-30 | 27-33 | 30-37 | 37-46 | 46-57 | 51-63 |
| | **18** | 27-33 | 30-37 | 33-41 | 41-51 | 51-63 | 57-71 |
| | **19** | 30-37 | 33-41 | 37-46 | 46-57 | 57-71 | 63-78 |
| | **20** | 33-41 | 37-46 | 41-51 | 51-63 | 63-78 | 70-87 |
| | **21** | 37-46 | 41-51 | 46-57 | 57-71 | 70-87 | 77-96 |
| | **22** | 41-51 | 46-57 | 51-63 | 63-78 | 77-96 | 84-105 |
| | **23** | 46-57 | 51-63 | 57-71 | 70-87 | 84-105 | 92-115 |
| | **24** | 51-63 | 57-71 | 63-78 | 77-96 | 92-115 | 100-125 |
| | **25** | 57-71 | 63-78 | 70-87 | 84-105 | 100-125 | 110-137 |
| | **26** | 63-78 | 70-87 | 78-97 | 92-115 | 110-137 | 120-150 |
| | **27** | 70-87 | 78-97 | 87-108 | 100-125 | 120-150 | 130-162 |
| **Zone D** | **28** | 78-97 | 87-108 | 97-121 | 110-137 | 130-162 | 140-175 |
| | **29** | 87-108 | 97-121 | 108-135 | 121-151 | 140-175 | 151-188 |
| | **30** | 97-121 | 108-135 | 121-151 | 135-168 | 151-188 | 168-210 |
| | **31** | 108-135 | 121-151 | 135-168 | 151-188 | 168-210 | 188-235 |
| | **32** | 121-151 | 135-168 | 151-188 | 168-210 | 188-235 | 210-262 |
| | **33** | 135-168 | 151-188 | 168-210 | 188-235 | 210-262 | 235-293 |
| | **34** | 151-188 | 168-210 | 188-235 | 210-262 | 235-293 | 262-327 |
| | **35** | 168-210 | 188-235 | 210-262 | 235-293 | 262-327 | 292-365 |
| | **36** | 188-235 | 210-262 | 235-293 | 262-327 | 292-365 | 324-405 |
| | **37** | 210-262 | 235-293 | 262-327 | 292-365 | 324-405 | 360-life |
| | **38** | 235-293 | 262-327 | 292-365 | 324-405 | 360-life | 360-life |
| | **39** | 262-327 | 292-365 | 324-405 | 360-life | 360-life | 360-life |
| | **40** | 292-365 | 324-405 | 360-life | 360-life | 360-life | 360-life |
| | **41** | 324-405 | 360-life | 360-life | 360-life | 360-life | 360-life |
| | **42** | 360-life | 360-life | 360-life | 360-life | 360-life | 360-life |
| | **43** | life | life | life | life | life | life |

*Commentary to Sentencing Table*

*Application Notes:*

1. *The Offense Level (1-43) forms the vertical axis of the Sentencing Table. The Criminal History Category (I-VI) forms the horizontal axis of the Table. The intersection of the Offense Level and Criminal History Category displays the Guideline Range in months of imprisonment. "Life" means life imprisonment. For example, the guideline range applicable to a defendant with an Offense Level of 15 and a Criminal History Category of III is 24-30 months of imprisonment.*

2. *In rare cases, a total offense level of less than 1 or more than 43 may result from application of the guidelines. A total offense level of less than 1 is to be treated as an offense level of 1. An offense level of more than 43 is to be treated as an offense level of 43.*

3. *The Criminal History Category is determined by the total criminal history points from Chapter Four, Part A, except as provided in §§4B1.1 (Career Offender) and 4B1.4 (Armed Career Criminal). The total criminal history points associated with each Criminal History Category are shown under each Criminal History Category in the Sentencing Table.*

Historical Note: Effective November 1, 1987. Amended effective November 1, 1989 (see Appendix C, amendment 270); November 1, 1991 (see Appendix C, amendment 418); November 1, 1992 (see Appendix C, amendment 462); November 1, 2010 (see Appendix C, amendment 738).

**No. 21-2231**

# In the United States Court of Appeals for the Seventh Circuit

DeAndre Cherry,

*Petitioner – Appellant*,

v.

United States of America,

*Respondent – Appellee.*

On Appeal from the United States District Court
for the Northern District of Illinois
No. 1:20-cv-04752 – Hon. Ronald A. Guzman

**DeAndre Cherry's Required Short Appendix**

Matt Gregory
Brian C. McCarty
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
mgregory@gibsondunn.com

*Appointed counsel for Petitioner – Appellant DeAndre Cherry*

## Table Of Contents

Page

Opinion and Order Denying Petition to Vacate, Set Aside, or Correct Sentence and Declining to Issue Certificate of Appealability (ECF 24 May 3, 2021) .......... RSA1

Minute Entry Denying Petition to Vacate, Set Aside, or Correct Sentence and Declining to Issue Certificate of Appealability (ECF 25 May 3, 2021) .......... RSA19

Judgment (ECF 26 May 3, 2021) .......... RSA20

Pursuant to Seventh Circuit Rule 30(d), I hereby certify that all the materials required by Seventh Circuit Rule 30(a) and (b) are included in this Required Short Appendix and the Separate Appendix.

*/s/ Matt Gregory*
Matt Gregory

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20 CV 4752 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| DEANDRE CHERRY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Deandre Cherry's pro se petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255; motion for leave to amend the § 2255 petition; and second motion for leave to amend the § 2255 petition. For the reasons set forth below, the motions to amend the § 2255 petition are granted, and the § 2255 petition, as amended, is denied.

## BACKGROUND

On May 31, 2012, a man was arrested by Drug Enforcement Agency agents while attempting to take possession of 26 kilograms of cocaine near Chicago's O'Hare Airport. During an interview after the arrest, the man told DEA agents that he was planning to deliver half of the cocaine that night to a man he called "Mo." The arrestee agreed to become a confidential informant ("CI") for the DEA and help the agents execute a sting operation that night to ensnare the dealer down the line. During the ensuing sting operation, "Mo," who was later identified as Deandre Cherry, met the CI in a parking lot in Markham, Illinois, and was arrested mid-deal. The agents ended up seizing from Cherry's Mercedes SUV a satchel containing baggies that later testing confirmed contained 348.1 grams of heroin and 13.7 grams of cocaine base (crack). After Cherry was read his *Miranda* rights, he told the agents that three weeks earlier, the CI had fronted him a half-kilogram of heroin for $31,500.00, but it was low-quality heroin that had resulted in customer complaints, so at the time of his arrest, Cherry was bringing 300 grams of heroin back to the CI to exchange for an equivalent amount of cocaine.

Cherry was charged on June 14, 2012 in a one-count indictment for possessing with intent to distribute more than 100 grams of heroin, in violation of 21 U.S.C. § 841(a)(1). In August 2012, Cherry, through counsel Beau Brindley and Timothy Witczak, filed two pretrial motions to suppress the evidence seized and statements made to the police after the arrest and vehicle search. In the first motion, Cherry argued that the agents lacked probable cause to arrest him, and in the second, he asserted that the agents had no authority to search the satchel within his SUV because the drugs were not in plain view. This Court held an evidentiary hearing in November 2012 and took pre-hearing and post-hearing briefs from the parties. At the hearing,

the Court heard from four law enforcement agents who were involved with the sting, as well as Cherry. The agents testified about the information the CI provided them; the CI's phone calls with Cherry (conversations that were recorded, but not monitored in real time by the agents); their plan for the sting; their surveillance of the meeting between the CI and Cherry; Cherry's arrival at the meeting place; what they observed during the meeting; and Cherry's arrest. Two of the agents testified that after Cherry opened the driver's side door of his SUV in an attempt to flee, they could see through the open door a clear plastic bag containing suspected drugs within the open flap of Cherry's satchel, which was on the front passenger seat. For his part, Cherry testified about the purpose of his meeting with the CI and the circumstances of his arrest. He acknowledged that he had drugs and money in his SUV that day, but stated that the heroin was wrapped in a black plastic bag inside the satchel, which was on the floor of the front passenger area and closed and locked at the time of his arrest. Cherry further stated that he had placed paperwork—car titles—on top of the bag of drugs to give himself the appearance of a legitimate businessman.

This Court issued a memorandum opinion and order on April 11, 2013, denying Cherry's motions. (Case No. 12 CR 415, ECF No. 60.) The Court concluded that there was probable cause to arrest Cherry, given that the meeting of the CI and "Mo" occurred where, when, and in substantially the manner the CI said it would occur; "Mo" was driving the make, model, and color of vehicle the CI said he would be driving; nothing the CI said or predicted was contradicted by the agents' observations; the agents observed Cherry positioning himself in a way that allowed him to look at the narcotics trap in the back of the CI's vehicle; and upon hearing the police announce themselves, Cherry attempted to flee. The Court further concluded that the agents' testimony about the circumstances of Cherry's arrest and the drugs in plain view in Cherry's SUV was substantially consistent and made sense in light of the entire record, and thus there was probable cause to search Cherry's SUV. The Court also agreed with the government's alternative argument that the drugs inevitably would have been discovered by lawful means as part of an inventory search of the vehicle.

In May 2014, Cherry moved for substitution of counsel, and the motion was granted. Andrea Gambino entered her appearance for Cherry, and Brindley and Witczak withdrew. In September 2014, Gambino filed three motions. The first was for reconsideration of the denial of Cherry's motions to suppress. The motion was premised on *United States v. Glover*, 755 F.3d 811 (7th Cir. June 18, 2014), in which the Court of Appeals analyzed probable cause in the context of a confidential informant's tip. In Cherry's second motion, he moved for disclosure of the CI's identifying information, under *Roviaro v. United States*, 353 U.S. 53 (1957). He argued that, in the absence of more information about the CI, the Court's finding of probable cause was not "neutral and based on access to all available information." (12 CR 415, ECF No. 85, Mot. for Disclosure at 4.) Cherry further argued that the CI would be in a position to testify at trial that Cherry did not intend to sell him drugs during their encounter and did not express a willingness to accept drugs from the CI. Cherry moved in his third motion for production of the camera or electronic storage device that contained the metadata for the photographs of the satchel and drugs that were taken at the arrest scene by Task Force Officer Jose Castaneda, one of the agents present. Cherry explained that because one photo depicted the satchel with a closed flap yet others depicted it as open with its contents exposed, and the time stamps on the photos revealed only hours and minutes but not seconds, the metadata was necessary to show in what order the

photographs were taken; if the metadata revealed that the photo of the closed satchel was taken prior to the others, it would contradict the agents' testimony that the drugs were in plain view. The government's response to Cherry's third motion was that the metadata were not available because Castaneda had taken the photos with his personal camera, which he had sold at a yard sale the previous summer, and he no longer had the electronic card that stored the photos. After the Court denied Cherry's motion for production as moot because the information was no longer available, Cherry filed a renewed motion with regard to the metadata, asserting that dismissal of the indictment was warranted because the government had failed to honor its obligation to turn over exculpatory information to him prior to trial, or in the alternative that the Court should suppress the photos and evidence found in Cherry's vehicle based on Castaneda's "bad faith disposal" of material evidence, or that the Court should conduct a hearing to determine whether Castaneda acted in accord with normal police practice when he sold the camera and disposed of the memory card.

In January 2015, Cherry also filed a revised motion for reconsideration of the order denying his suppression motions. In the revised motion, Cherry argued that (1) an enhanced audio recording from the CI's body camera did not support that Cherry had agreed to accept drugs from the CI, or other portions of the agents' testimony; (2) his inability to examine the photographic metadata violated Cherry's Fifth and Sixth Amendment rights and his rights under *Brady v. Maryland*, 373 U.S. 83 (1963); (3) under *Glover*, the omission of identifying information about the CI rendered invalid the Court's finding on probable cause to arrest; and (4) without evidence to justify Cherry's arrest, there was also no probable cause to search his SUV.

After taking briefs, the Court denied Cherry's motions. On Cherry's motions to reconsider, the Court found *Glover* inapposite because the Court was fully informed at the evidentiary hearing about the CI's background and involvement in the arrest. The Court also found that nothing in the audio recording undermined the Court's prior determinations; no evidence supported the contention that the agents anticipated that metadata related to the photos would some day be requested and that they intentionally destroyed it in order to deprive Cherry of it; and probable cause to search the vehicle existed based on plain view of the heroin at the top of Cherry's satchel and as a search incident to arrest, and the drugs inevitably would have been discovered during an inventory search of the vehicle. (12 CR 415, ECF No. 106.) In denying Cherry's motion for disclosure of the CI's identity, the Court determined that Cherry had failed to meet his burden of showing that his need for the information was relevant and helpful to his defense. The Court explained that the government had announced that it would not call the CI as a witness at trial; Cherry had been charged with actual possession of the drugs that were found in his vehicle at the time of his arrest, not the drugs in the CI's vehicle; the CI was not an occurrence witness to the offense with which Cherry had been charged or the possession offense that was anticipated to be charged in a superseding indictment; and Cherry had pointed to no evidence the CI could possibly have in regard to those offenses. (12 CR 415, ECF No. 105.) As for Cherry's motion concerning the photographic metadata, the Court ruled that there was no evidence of bad faith. The Court noted that Cherry had not raised the metadata issue until a year and a half after the Court ruled on the motions to suppress, and that Cherry pointed to nothing to support the farfetched argument that the government had intentionally destroyed evidence in order to thwart future motions. The Court concluded that if defense counsel had not perceived that the evidence would likely be favorable to Cherry, there was no reason for law enforcement

or the government to have done so, and the evidence was not exculpatory. (12 CR 415, ECF No. 165.)

Cherry filed an interlocutory appeal of the denial of reconsideration of the order denying his suppression motions. The Court of Appeals dismissed the appeal, stating that a criminal defendant seeking review of the denial of a motion to suppress evidence is a matter that must wait until entry of final judgment before it can be appealed. (12 CR 415, ECF No. 126.)

On December 3, 2015, Cherry was charged in a one-count superseding indictment with possessing with intent to distribute more than 100 grams of heroin and a quantity of crack. On June 24, 2016, Cherry filed a motion pursuant to *Corley v. United States*, 556 U.S. 303 (2009), to suppress the statements he made to law enforcement. He argued that his statements were inadmissible because they were made more than six hours after his arrest and before he was brought before a magistrate judge. The Court denied the motion because Cherry, after his arrest, had sought to cooperate with law enforcement and signed a written waiver of prompt presentment. (12 CR 415, ECF No. 183, Tr. of 6/27/2016 Proceedings at 6.)

The case proceeded to a three-day trial that began on June 27, 2016. The jury convicted Cherry of the single count of the superseding indictment. After trial, Cherry filed a motion for judgment of acquittal or, in the alternative, for a new trial. He challenged the sufficiency of the evidence and reasserted his pretrial arguments pertaining to probable cause, the metadata, and his statements to law enforcement. Cherry also asserted that the Court erred in failing to instruct the jury that its decision with respect to the quantity of drugs he possessed would set the mandatory minimum and statutory maximum for sentencing. The Court denied Cherry's post-trial motion in a written order. (12 CR 415, ECF No. 201.)

Cherry was sentenced to a term of 240 months' imprisonment. He appealed, and was represented on appeal again by Brindley, along with Michael Thompson. Cherry asserted on appeal that (1) the Court erred in denying his suppression motions because there was no probable cause to arrest him or search his vehicle, and (2) the government violated *Brady* by failing to preserve the photographic metadata. The Court of Appeals affirmed, finding that there was probable cause to arrest Cherry; the agents lawfully searched his vehicle; and there was no abuse of discretion in determining that Castaneda's camera was not sold in bad faith. *United States v. Cherry*, 920 F.3d 1126 (7th Cir. 2019).

On August 12, 2020, Cherry filed the instant petition for post-conviction relief. His petition contains seven grounds for relief, six of which are claims of ineffective assistance of counsel. On September 8, 2020, Cherry moved to amend his petition to add an eighth ground for relief in which he argues that the agents lacked probable cause to arrest and search him. The government filed a response to the petition and the motion to amend. The Court grants Cherry's motion to amend his petition to add Ground Eight.

On November 19, 2020, Cherry filed a second motion to amend his petition, seeking to add a ninth ground for relief in which he argues that counsel were ineffective for failing to challenge his career-offender status. The Court will address this motion in a separate section below.

## DISCUSSION

### A. Section 2255 Petition

Section 2255 allows a defendant to move to vacate, set aside, or correct a sentence that was imposed in violation of the Constitution or laws of the United States, was imposed by a court that lacked jurisdiction, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). A court may deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show" that the defendant is not entitled to relief. *Id.* § 2255(b). Relief under § 2255 "is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013); *see also Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) ("[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process.").

Ineffective-assistance claims are analyzed under the two-part *Strickland* test. *United States v. Lindsay*, 157 F.3d 532, 534 (7th Cir. 1998) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Under *Strickland*, Cherry must show (1) deficient performance, i.e., that counsel's representation fell below an objective standard of reasonableness, and (2) that as a result Cherry was prejudiced, such that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *See United States v. Jansen*, 884 F.3d 649, 655-56 (7th Cir. 2018). "Because counsel is presumed effective, a party bears a heavy burden in making a winning claim based on ineffective assistance of counsel." *Shell v. United States*, 448 F.3d 951, 955 (7th Cir. 2006) (internal punctuation and citation omitted). A petitioner must identify specific acts or omissions that are alleged to have fallen below professional norms. *Strickland*, 466 U.S. at 690. If one prong of the *Strickland* test is not satisfied, it is unnecessary to reach the other prong. *Id.* at 697.

Because Cherry is proceeding pro se, the Court liberally construes his filings. *See Echols v. Craig*, 855 F.3d 807, 812 (7th Cir. 2017). As will become apparent below, and as the government points out, Cherry's petition largely centers on two issues that have already been extensively litigated: the camera metadata and the credibility of the agents present at his arrest.

#### 1. Ground One

In Ground One, Cherry argues that counsel who represented him for his suppression motions and at the suppression hearing[1] were ineffective for failing to "thoroughly investigate" the details of his arrest and for failing to obtain "crucial evidence" that would have exonerated him. (ECF No. 1, Pet. at 3.) Cherry actually raises several arguments within Ground One; the Court will address each in turn.

---

[1] Although additional counsel represented Cherry at this stage of the proceedings, Brindley was principal counsel. Cherry refers only to Brindley, so the Court will do the same.

Cherry first contends that Brindley was ineffective for failing to follow his express instructions to request to preserve and inspect Castaneda's camera, subpoena the camera and metadata, and object to Castaneda's use of a personal camera. Cherry also complains that counsel did not follow his instructions to subpoena surveillance videos that may have existed from businesses in the area around his arrest. Cherry fails to provide any details as to when and how he purportedly gave these instructions to counsel. In any event, the arguments have no merit. The Constitution requires an attorney to make a "reasonable" investigation, but not of "every possible factual scenario." *Long v. United State*s, 847 F.3d 916, 922 (7th Cir. 2017). "When a petitioner alleges that counsel's failure to investigate resulted in ineffective assistance, the petitioner has the burden of providing the court with specific information as to what the investigation would have produced." *United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011). Cherry offers no evidence that surveillance recordings from the area of his arrest even existed, and he offers only speculation about what the metadata and recordings would have shown. Moreover, as the Court of Appeals concluded, the photographic metadata would not have made a difference:

> [T]he contents of [Cherry's] vehicle, including the satchel and the drugs within it, would have been discovered in a lawful inventory search once the agents took custody of the vehicle. *This makes any debate about the order in which the photographs were taken and whether the bag was opened or closed irrelevant.*

920 F.3d at 1141 (emphasis added).

Cherry also contends that Brindley was ineffective for failing to subpoena Chicago Police Officer/DEA Task Force Officer Guillermo Gamboa to testify at the suppression hearing. (Gambino called Gamboa to testify at trial, but Brindley did not call him to testify at the suppression hearing.) According to Cherry, Gamboa's testimony would have undermined that of the other agents as to whether the drugs in Cherry's vehicle were in plain view. The Court of Appeals expressly addressed this issue and rejected the contention that Gamboa's testimony undercut that of the other agents who testified about the events leading to Cherry's arrest and the discovery of the drugs:

> After hearing testimony from the agents and Cherry, the court concluded that the drugs were in plain view after Cherry opened the driver's side door to his car while trying to flee. We see no reason not to give deference to this credibility and factual finding. As the district court concluded, the agents' testimony was substantially consistent: they arrested the defendant after he opened the door to his SUV, and through that open door they were able to see the messenger bag with a plastic bag containing a substance the agents reasonably suspected was illegal drugs. The district court concluded that the agents' version of events[] was more likely true than Cherry's, and that any minor discrepancies were immaterial. The district court did not believe Cherry's testimony that he hid the drugs at the bottom of the satchel, below several car titles and then placed the satchel on the floor of the front passenger side of the car. The district court reasoned that a drug dealer coming to exchange drugs would want to minimize his vulnerability and thus the time for the exchange, and therefore would place the drugs where they

would be readily accessible. As we have noted, we must accept the district court's credibility determination unless the facts, as testified to by the police officers, were so unbelievable that no reasonable factfinder could credit them.

Cherry does not seem to dispute the prerequisites to the plain view doctrine—that the agents were lawfully in the parking lot and that the incriminating nature of the evidence would have been readily apparent. Cherry argues instead that his version of events is the one to be believed—the drugs were hidden inside the satchel on the floor of the Mercedes where the agents could not have seen them and the agents' reports to the contrary were inconsistent and thus unbelievable. We can make short shrift of this argument. A district court's credibility assessment based on live testimony will not be disturbed unless it is completely without foundation.

Even if we were to perseverate on the inconsistencies in the agents' testimony, none makes it impossible that the drugs were in plain view. At the suppression hearing, Agent O'Reilly testified that Cherry "ran across the parking spot to his vehicle" and opened the drivers' side door, and had his hand and arm inside the car when he was arrested. Agent Brazao testified that although he did not see who opened the door to the SUV, after he secured the informant, he walked back to the SUV one minute after the agents moved in to arrest Cherry, noticed the doors were open, and saw a black satchel and drugs through the open door. Agent Crawford testified that he did not see who initially opened the door, but when he arrived at the SUV, the other agents had already arrested Cherry and he was on the ground and the door was open. Crawford looked into the SUV to make certain there were no other people in the SUV who might be a threat to the agents and saw the satchel and drugs in plain view. Those agents testified consistently at trial. Cherry points accusatorily to Chicago police officer Gamboa's testimony. Officer Gamboa did not testify at the suppression hearing, but he did testify at trial and his testimony was less clear about the door. He testified that Cherry "very quickly tried to get into his vehicle," Tr. 6/28/16 at 390, 391 (R. 179) and that he was handcuffed outside of the vehicle. *Id.* at 391. His testimony about whether the door to the SUV was open or closed, however, was a bit equivocal. Cherry hangs his hat on the fact that Officer Gamboa testified at trial that the agents grabbed Cherry before he could open his car. Gamboa's testimony, however, was not as clear as Cherry presents it to be:

> Gamboa: He tried to go in the car. I tried not to let him go in the car.
> Q. And you grabbed him?
> A. From the shoulders and his arm, yeah.
> Q. So he wasn't in the car at the time that you grabbed him?
> A. No. He was trying to get into the car.
> Q. Door was open?
> A. Trying to open it, yeah.

> Q. Oh, so the door—he hadn't been able to—he wasn't successful in opening the door?
> A. He didn't get in. *If he did open it, I wasn't paying attention.* I was just trying to make sure he didn't get in.
> Q. So you don't recall whether it was open or closed?
> A. *It wasn't open— he didn't get in. Let's put it that way.* He couldn't get his foot in, so it wasn't.
> Q. Okay. So *you don't think it was open*?
> A. *No.*
>
> *Id.* at 391-92 (emphasis ours).
>
> None of the testimony gives rise to an irreconcilable difference. In fact, none of it is inherently inconsistent. Testimony is not incredible as a matter of law
>
> > only because the witness may have been impeached by certain discrepancies in [her] story, by prior inconsistent statements, or by the existence of a motive to provide evidence favorable to the government. To find a witness's testimony to be incredible as a matter of law, it must have been physically impossible for the witness to have observed that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all.
>
> [*United States v.*] *Contreras* , 820 F.3d [255], 264 [(7th Cir. 2016)].
>
> The district court certainly did not err by accepting the testimony of the three agents who were clear on the matter that the door was open allowing the agents to view the drugs in plain view on the seat. This was particularly true after the suppression hearing when the district court had only the testimony of Agents Brazao, Crawford and O'Reilly to consider. But this was also true even when the court reviewed the post-trial motion for acquittal. We cannot say that no reasonable jury could have concluded that the door was open and the drugs in plain view. We see no reason to disturb the credibility and factual findings of the district court on the motion to suppress and certainly no reason to upset the jury's conclusion.

*Cherry*, 920 F.3d at 1138-39 (some citations and internal punctuation omitted).[2] Thus, even if Brindley had called Gamboa to testify at the suppression hearing, the testimony would not have affected the Court's conclusions on probable cause. Cherry's attempts to revisit his arguments

---

[2] The Court of Appeals also noted that the agents' testimony "was inconsistent as to whether Cherry parked directly next to the informant's car, one parking spot away, or one-and-a-half parking spots away," but found that discrepancy to be "immaterial." *Id.* at 1130 n.1.

that the agents lacked credibility are unpersuasive; he does not present any new evidence that calls into doubt the conclusions of this Court and the Court of Appeals.

Next, Cherry argues that Brindley was ineffective for failing to move to reopen the suppression hearing to seek to present the camera metadata or to present the argument that Castaneda acted in bad faith by using his personal camera to take photographs at the scene and by selling it after the suppression hearing. As discussed above, Cherry merely speculates about what the metadata would have shown, and it ultimately would have been irrelevant given that there were other avenues for admission of the drugs. Furthermore, following the suppression hearing, Gambino filed both pretrial and post-trial motions related to the metadata and alleged bad faith, and the issues were also raised on direct appeal. The metadata arguments have been litigated and rejected numerous times, and Brindley's having filed motions premised on those issues would not have changed the outcome.

Cherry's next contention is that the inevitable discovery doctrine does not apply here. The Seventh Circuit concluded that this Court correctly held in the alternative that the drugs would have been admissible under this doctrine because once Cherry was arrested, the agents "would have removed his car from the parking lot and it would have been subject to an inventory search, as is the usual protocol." 920 F.3d at 1140. Cherry maintains that his SUV was on private property and the government had no interest in seizing or intent to seize it, so the agents had no authority to relocate the vehicle or conduct an inventory search. This argument was not raised at trial or on appeal, and Cherry does not explicitly characterize it as one of ineffective assistance. To the extent Cherry directly raises the argument, it is procedurally defaulted and thus barred from collateral review unless he can demonstrate cause for the default and actual prejudice from the failure to appeal or that enforcing the default would lead to a fundamental miscarriage of justice. *See Hinton v. United States*, No. 15 C 752, 2015 WL 1943261, at *3 (N.D. Ill. Apr. 29, 2015). Cherry fails to do so. Even when Cherry's placement of this argument within Ground One is viewed liberally as an assertion of cause due to ineffective assistance, the argument is waived for lack of development. *See United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) (arguments that are unsupported by pertinent authority are waived, even where constitutional issues are raised). Cherry cites no authority for the proposition that the agents were not permitted after his arrest to follow the "usual protocol," as the Court of Appeals put it, of removing his vehicle from the parking lot and performing an inventory search. The argument is meritless in any event. Agent Brazao testified at the suppression hearing that the agents did not want to leave Cherry's SUV in the parking lot due to a concern that someone would steal or damage it. 920 F.3d at 1140. Cherry makes a conclusory attempt to contrast a private parking lot with a street, but the need to protect the vehicle would have been the same under either circumstance. "Warrantless inventory searches of vehicles are lawful if conducted pursuant to standard police procedures aimed at protecting the owner's property—and protecting the police from the owner's charging them with having stolen, lost, or damaged his property." *United States v. Pittman*, 411 F.3d 813, 817 (7th Cir. 2005).

Cherry also asserts that Brindley operated under a conflict of interest because he was "federally indicted." (Pet. at 14-15.) Cherry does not provide any more detail, but speculates that "perhaps this is the reason counsel failed to ask for" or seek to preserve the camera or metadata, or to call Gamboa as a witness at the suppression hearing. (*Id.* at 12, 15.) Brindley

represented Cherry from July 26, 2012 through May 20, 2014, and again on appeal, from late September 2017 through 2019. This period of time did not overlap at all with the time during which Brindley was under federal investigation and indictment, so there was no conflict with respect to that proceeding.[3] The government points out, however, that there is another potential conflict of interest because Brindley was also the subject of a contempt order issued in the Central District of Illinois in December 2012, which was vacated by the Court of Appeals in October 2013. *See United States v. Britton*, No. 10-CR-20090, 2012 WL 6047983, at *1 (C.D. Ill. Dec. 5, 2012), *vacated and remanded*, 731 F.3d 745 (7th Cir. 2013). To establish a violation of the Sixth Amendment right to conflict-free counsel, a defendant must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. *United States v. Lewisbey*, 843 F.3d 653, 657 (7th Cir. 2016). The contempt matter never resulted in an actual conflict of interest for Brindley, because it was never referred to a United States Attorney's Office for investigation or prosecution. *Bentley v. United States*, No. 17-01102-JES, 2018 WL 4635023, at *6 (C.D. Ill. Sept. 27, 2018). Furthermore, there is no indication that any conflict had an adverse effect on Brindley's representation of Cherry. In 2012 and 2013, Brindley filed the motions to suppress and pre-hearing reply brief; represented Cherry at the suppression hearing; and filed post-hearing briefs. Cherry recycles his arguments about counsel's purported inadequacies, discussed above, and speculates that they are attributable to a conflict. But, even assuming for purposes of discussion that there was an actual and not merely potential conflict, Cherry fails to demonstrate that it altered the outcome of the proceedings. *See id.* at *7 (rejecting a similar argument regarding Brindley's contempt proceedings).

Cherry's final argument in Ground One is that his sentence was imposed in violation of the Constitution because there was no probable cause to arrest him or search his vehicle. Cherry reiterates his criticisms of the agents' testimony about their corroboration of information provided by the CI and about what occurred before Cherry arrived to meet the CI. These contentions were previously raised and rejected at the trial and appellate levels. "[A] section 2255 motion is not an occasion to rehash arguments that were or could have been raised on appeal." *United States v. Riney*, No. 15 C 1155, 2015 WL 4880919, at *3 (N.D. Ill. Aug. 14, 2015); *see also Vinyard v. United States*, 804 F.3d 1218, 1227 (7th Cir. 2015) (issues raised on direct appeal may not be reconsidered on a § 2255 motion absent changed circumstances). As the Court of Appeals noted, the CI was not an anonymous tipster; he cooperated with the agents after his arrest and throughout the sting operation; he knew when and where "Mo" would arrive, what he looked like, and what kind of vehicle he would be driving; he provided the agents a confirmatory signal after meeting with "Mo"; and Cherry then attempted to flee. 920 F.3d at 1135-37. Because the "agents had multiple pieces of detailed information from an informant who was implicating himself in a drug deal—information corroborated as the predictions came true," there was probable cause to support Cherry's arrest. *Id.* at 1137. Cherry offers no basis for revisiting these issues; the governing law has not changed, and Cherry does not identify any new evidence that might affect the outcome.

---

[3] Brindley was notified in July 2014 that he was under federal investigation. *United States v. Smith*, 771 F.3d 1045, 1046 (7th Cir. 2014). He and Thompson were indicted on various charges relating to subornation of perjury. After a bench trial in August 2015, they were found not guilty of all charges. (14 CR 468, N.D. Ill.)

Ground One does not entitle Cherry to relief.

**2. Ground Two**

Cherry asserts in Ground Two that his counsel were ineffective for failing to follow his instructions to file a motion to direct the Court's attention to its "erroneous interpretation" and "manipulation" of the record in its ruling on the suppression motions. (Pet. at 23-32.) Cherry says that because there were inconsistencies in the agents' testimony at the suppression hearing, Brindley and Gambino should have filed a motion pointing out to the Court that its ruling was wrong. (In fact, Gambino did file such a motion.) Ground Two is simply another iteration of Cherry's unpersuasive argument that the agents' testimony concerning the events that transpired with the CI prior to Cherry's arrest lacked credibility. Cherry does not present any new evidence that calls into doubt the conclusions of this Court and the Court of Appeals, and he does not demonstrate any deficiency in counsel's performance in this regard.

**3. Ground Three**

Ground Three is similar to Ground One, except that here, Cherry focuses on Gambino. First, Cherry claims that she was ineffective for failure to have a trial strategy. He says that during trial, he asked Gambino about her strategy, and she replied that she did not have one. He further argues that he believes that Gambino was "compromise[d]" because she "was a person of interest in[] a federal investigation." (Pet. at 33.) Cherry also provides a laundry list of Gambino's other alleged errors: she did not file an "affidavit alleging what the true facts are"; disregarded Cherry's instruction to accept a particular juror who said that he read the Bible every day; did not file a timely motion based on *Corley*; did not seek to obtain the notes of Agent O'Reilly; was initially reluctant to call Officer Gamboa as a witness and, according to Cherry, did so only because Cherry insisted; failed to object to "jury instruction #13"; and failed to object to Agent O'Reilly's "misconduct," which included "moving the evidence in and out" of the courtroom and "sitting at the prosecution table prior to" testifying. (Pet. at 33-38.) The Court agrees with the government that these allegations are incorrect, unsupported, or would not have changed the outcome of the trial.

Cherry provides no facts to support his contention that Gambino operated under a conflict of interest here due to a federal investigation during the relevant time frame. As the government notes, Gambino was a person of interest in two investigations that well predated her representation of Cherry, which began in May 2014. *See Lafuente v. United States*, 617 F.3d 944, 946 (7th Cir. 2010) (conflict issue arose from investigation that was resolved in the early 2000s); *United States v. Lewellen*, No. 09 CR 332-2, 2015 WL 13849170, at *1 (N.D. Ill. July 31, 2015) (conflict issue arose during trial in January 2012). The government states that it is unaware of a conflict that coincided with Gambino's representation of Cherry, and Cherry provides only an unsupported assertion, so further investigation is not warranted. *See Lafuente*, 617 F.3d at 946.

Regarding the purported lack of trial strategy, even taking as true Cherry's allegation about Gambino's statement, the record shows that Gambino did have a strategy and did mount a vigorous defense in the face of what amounted to formidable evidence against Cherry—the

circumstances of his arrest, the discovery of the drugs, and his post-arrest statements. Gambino filed extensive pretrial and post-trial motions, and she called witnesses at trial and presented argument in an attempt to demonstrate that the agents lacked credibility. Those were strategic decisions that Cherry fails to show fell outside the wide range of professional assistance. Her efforts were unsuccessful, but that does not mean that her assistance was constitutionally ineffective. *See United States v. Wilks*, 46 F.3d 640, 644 (7th Cir. 1995). The avenues for defense were quite limited, and Cherry fails to suggest any alternative strategy that would have changed the outcome of the case.[4] Likewise, Cherry fails to demonstrate that counsel's jury-selection strategy was ineffective simply because she disregarded Cherry's instruction to accept a particular juror. Cherry cites no authority for the proposition that counsel was required to follow his instruction, nor does he develop his argument to indicate how counsel's rejection of the juror fell below a standard of reasonableness. Cherry also complains that Gambino disagreed with him about calling Officer Gamboa as a witness at trial, but he concedes that she did call him, and does not explain how any prejudice arose from their initial disagreement.

Cherry fails to demonstrate that he is entitled to relief with respect to the remaining alleged errors. Cherry contends that Gambino failed to file a "timely" *Corley* motion. The *Corley* motion was filed on the eve of trial, but Cherry fails to explain how an earlier filing would have changed the outcome of the case. The issue of the factual affidavit also relates to the *Corley* motion. Shortly before trial began, the Court told counsel that if Cherry's motion was truly based on a factual dispute in that Cherry was asserting that he did not in fact tell the agents that he wanted to cooperate with them (contrary to the agents' report), the motion should have been accompanied by an affidavit from Cherry. Although Cherry now says in his petition that he "never asked to cooperate," (Pet. at 33), he fails to argue that he told Gambino so, and he also fails to explain what facts should have been included in an affidavit or how it would have changed the outcome of the case.

Cherry also faults Gambino for not having sought Agent O'Reilly's "alleged notes." (*Id.* at 34.) Cherry asserts that O'Reilly "presented false testimony to the Court and jury," but he does not elaborate on what notes he may be referring to, what they would have revealed, or how they would have changed the outcome of the case. The same is true of Cherry's complaint that Gambino failed to object to O'Reilly's handling of evidence or his presence at the prosecution's table prior to testifying at trial. Aside from vague speculation that O'Reilly engaged in "misconduct," Cherry fails to develop any argument as to how either event prejudiced him.

Lastly, Cherry maintains that Gambino was ineffective for failing "to object to jury instruction #13." (*Id.* at 36.) Cherry also states that counsel should have "explore[d]" this instruction and that "withdrawing" the instruction rendered his trial unfair, (*id.*), so it is unclear whether he is contending that Gambino should have offered an instruction or objected to one of

---

[4] Cherry does contend in his reply brief that counsel should have raised "an entrapment defense," (ECF No. 19, Reply at 29), but arguments raised for the first time in a reply brief are waived. *Fernandez v. United States*, 197 F. App'x 513, 514 (7th Cir. 2006). Nevertheless, the facts in this case would not support such a defense.

the government's proposed instructions. The argument is undeveloped (and unclarified in Cherry's reply), so it is waived.

None of the arguments Cherry raises in Ground Three entitle him to relief.

**4. Ground Four**

Cherry maintains in Ground Four that trial and appellate counsel were ineffective for failing to argue at sentencing and on appeal that his conviction for possession of a machine gun did not qualify as a predicate "crime of violence" that could support sentencing enhancements under the career-offender guideline or 21 U.S.C. § 851.

The career-offender guideline, U.S.S.G. § 4B1.1, provides that a defendant who was at least eighteen years old at the time of the instant offense of conviction, as was Cherry, is a career offender if the instant conviction is a felony controlled-substance offense and the defendant has at least two prior felony convictions of either a "crime of violence" or a controlled-substance offense. As set out in the Presentence Investigation Report ("PSR"), Cherry's criminal history included the following felony convictions in Cook County, Illinois: attempted murder, in October 1994, Case Number 93 CR 1225201; armed robbery, in October 1994, Case Number 93 CR 1225101; manufacture/delivery of 15 to 100 grams of cocaine, in October 2003, Case Number 03 CR 0020101; and possession of a machine gun, in October 2003, Case Number 03 CR 0020101. (12 CR 415, ECF No. 190, PSR at 10-12.) The probation officer stated in the PSR that Cherry was a career offender because he had "at least two prior felony convictions of either a crime of violence or a controlled substance offense (Cook County Case Nos. 93CR1225201; 93CR1225101; and 03CR0020101)." (*Id.* at 8.) The probation officer did not specify which 2003 offense was the qualifier, but since there is a reference to a "controlled substance offense" and the other two offenses were crimes of violence, the drug offense appears to be the qualifier. Cherry's repeated contention that he "was never sentenced under any drug charge," (Pet. at 40), and that the PSR does not "describe or cite" an Illinois drug charge, (Reply at 32), is simply contradicted by the record. In addition, there are still two remaining convictions for crimes of violence—attempted murder and armed robbery—that supported application of the career-offender enhancement. The record also shows that the machine-gun conviction was not used as a qualifier for the application of § 851. On June 20, 2012, the government filed a pretrial notice pursuant to § 851 stating its intent to seek an enhanced sentence based on the 2003 conviction for "manufacture/delivery of a controlled substance," (12 CR 415, ECF No. 14), not the machine-gun conviction. The PSR also expressly refers to the government's notice of "Information Stating Previous Drug Conviction to be Relied Upon in Seeking Increased Punishment, pursuant to 21 U.S.C. § 851(a)." (PSR at 4.)

Because this claim is meritless, Cherry cannot show that counsel was ineffective for failing to raise it at the trial or appellate level.

**5. Ground Five**

In Ground Five, Cherry contends that trial and appellate counsel were ineffective for failing to "follow [Cherry's] express instructions to file a motion pointing out to the Court,

fabrication that was presented in the record." (Pet. at 44.) Cherry includes several lengthy excerpts of the agents' testimony, and he maintains that because the agents testified about details that are "physically impossible" and do not "line up consistently," the Court must as a matter of law "deem O'Reilly and his fellow officers as incredible." (*Id.* at 45-54.) This claim is another permutation of Cherry's oft-repeated argument that the agents who testified at his suppression hearing and trial were not credible.

To have obtained relief in this regard, counsel would have had to demonstrate that there was false testimony, the government knew or should have known it was false, and there was a likelihood that the false testimony affected the judgment of the jury. *United States v. Cardena*, 842 F.3d 959, 976-77 (7th Cir. 2016). Cherry has pointed to what are, at most, small discrepancies in the agents' accounts of what occurred during the sting. "[M]ere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." *Id*. at 978. Cherry's contentions that the agents could not possibly have observed the events about which they testified are unpersuasive. The agents were present at the scene and participated in Cherry's arrest, and their testimony did not defy the "laws of nature," as Cherry asserts. (Pet. at 58.) As discussed above, Cherry's counsel challenged the agents' credibility at both the trial and appellate levels; the arguments were rejected. Any claim of perjury would have failed as well. Cherry does not present any new evidence or argument; he simply indicates his disagreement with the courts' conclusions. His claim that counsel was ineffective for failing to advance a claim of perjury is without merit.

### 6. Ground Six

Cherry argues in Ground Six that trial counsel was ineffective for "opening the door to allow incriminating evidence before the jury" that, according to Cherry, "caused a conviction," and for failing to pursue the "right to cross-examine" the CI. (*Id.* at 60.) On cross-examination of Agent Brazao, counsel asked the agent questions about what he had told the CI; the recording device that was given to the CI; what was expected to happen in the parking lot during the sting; and what the interior of the CI's car looked like. (12 CR 415, ECF No. 184, Tr. of 6/28/2016 Proceedings at 203, 210-12, 217.) The Court ruled that this questioning opened the door to inquiries of Agent Brazao about the circumstances under which the arrestee became a CI and about the agents' communications with CI. (*Id.* at 231-35.)

Cherry contends that Gambino rendered ineffective assistance by failing to attempt to call the CI as a witness at trial after opening the door to this testimony, because, according to Cherry, the government's "entire case rest[ed] solely on the word of an unauthorized, unreliable[] - as a matter of law - informant." (Pet. at 61.) Cherry fails to address, however, the basis for this Court's ruling on counsel's motion for disclosure of the CI's identity. As discussed above, Cherry was charged with possessing the drugs that were in his own vehicle when he was arrested, not the drugs that were in the CI's vehicle. The evidence was that during the brief meeting between the CI and Cherry, Cherry entered the CI's vehicle, but the CI did not enter Cherry's vehicle. The CI was not a witness to offenses with which Cherry was charged, and Cherry still points to no evidence that the CI would possess that would be relevant to those offenses. Furthermore, Cherry admitted to the agents in his post-arrest statement that he was meeting with the CI to return poor-quality heroin and discuss a swap for cocaine.

As the government notes, Cherry's argument is essentially that the CI's testimony would have been relevant to impeach the agents' credibility. But Cherry is unaware of what the CI would have said; he relies on sheer speculation to imply that the CI would have contradicted the agents on any material point. Cherry has therefore failed to demonstrate that counsel's performance was deficient for failing to further pursue the CI's identity or for failing to attempt to call the CI as a witness at trial. A lawyer's decision on whether to call a witness is a strategic decision generally not subject to review. *United States v. Best*, 426 F.3d 937, 945 (7th Cir. 2005). It was reasonable for counsel not to have sought testimony from the CI; he very well could have testified consistently with the agents or offered damaging information about his relationship with Cherry, and he would not have been able to provide any relevant and admissible evidence about the crux of the case—the presence of the drugs in Cherry's SUV.

**7. Ground Seven**

In Ground Seven, Cherry asserts that this Court "improperly interjected" itself into a dialogue at sidebar and "assumed [the] role of prosecutor," thus violating Cherry's right to a fair trial. (Pet. at 67.) Cherry does not assert ineffective assistance of counsel in this claim, which is procedurally defaulted because Cherry does not show cause for and prejudice from the failure to raise it on direct appeal.

Procedural default aside, Cherry cannot show that the sidebar affected the outcome of the case. The dialogue, which occurred during defense counsel's recross-examination of Agent O'Reilly, is as follows:

> BY MS. GAMBINO:
> Q: We have to rely on your report of what happened in that car, isn't that correct?
> [PROSECUTOR] MS. FERNANDEZ-HARVATH: Objection, Your Honor.
> THE COURT: Sustained.
> MS. GAMBINO: May I be heard at sidebar, Your Honor?
> THE COURT: Sure.
> (Proceedings at sidebar on the record. Defendant present.)
> . . .
> MS. GAMBINO: What is the basis for the objection?
> THE COURT: Well, you're asking a hypothetical question. You're asking him "we." First of all, I don't know who "we" is. You? Them? Everyone? The jury? Second, "We have to rely," I don't know what people rely on. I mean, ask him facts. Ask him what he did. Ask him if there was a report. Ask him if there's anything other than his testimony. All those things you can ask him, but don't ask him what we have to rely upon. That's subjective, it calls for speculation, and nobody really knows exactly what it means. That's the objection. Was that your objection?
> MS. FERNANDEZ-HARVATH: Yes, Your Honor.
> THE COURT: Okay. And it's sustained.
> (End of proceedings at sidebar.)

(12 CR 415, ECF No. 179, Tr. of 6/28/2016 Proceedings at 325.) Cherry argues that this Court "abandon[ed its] role of impartiality[] and played the role of the prosecutor" by stating the basis for its ruling before the prosecutor could provide the basis for her objection. (Pet. at 67.) In conclusory fashion, Cherry further argues that his defense was "seriously prejudiced" and that the jury was left with the impression that "defense counsel was incompetent." (*Id.* at 67-68.) Dozens of sidebars and rulings on objections occur during any given trial. Cherry fails to explain how he possibly could have been prejudiced given the brevity of the exchange and, most importantly, that it occurred at sidebar—out of earshot of the jury.

Ground Seven does not warrant relief.

#### 8. Ground Eight

Cherry contends in Ground Eight that the agents lacked probable cause to arrest and search him. (ECF No. 6, Mot. to Amend, at 2.) He argues that law enforcement "lacked the corroboration" of the CI's claims and thus that there was no probable cause for his arrest, and furthermore that the drugs should have been suppressed as fruits of an illegal arrest. (*Id.* at 6.) Cherry's probable-cause argument is not asserted as an ineffective-assistance claim, and he does not otherwise argue cause and prejudice, nor does the argument appear to differ from that which was raised and rejected at the trial and appellate levels. A § 2255 motion is not a recapitulation of a direct appeal, and there are no changed circumstances, so the issue may not be reconsidered at this stage. *See Vinyard*, 804 F.3d at 1227; *Varela v. United States*, 481 F.3d 932, 935-36 (7th Cir. 2007).

### B. Petitioner's Second Motion to Amend

On November 19, 2020, the Court received Cherry's second motion to amend his § 2255 petition, in which Cherry seeks to add a ninth claim. The motion is dated November 11, 2020, which was five days before the deadline for the government's response to Cherry's petition. Therefore, the government did not receive the motion in time to include in its brief a response to the proposed Ground Nine. The Court later ordered supplemental briefing.

In contrast with Cherry's first motion to amend his petition, Cherry's second motion was filed after the statute of limitations expired.[5] To be a permissible amendment and "relate back" to the original petition, Ground Nine must be based on a "common core of operative facts" as Cherry's original claims. *See Beason v. Marske*, 926 F.3d 932, 938 (7th Cir. 2019). An amendment does not relate back merely because it relates to the same trial, conviction, or sentence as the timely-filed claims. *Id.* Here, relation back is debatable. Cherry argues in Ground Four that counsel were ineffective for failing to contest his conviction for possession of a machine gun as a predicate for enhancing his sentence under the career-offender guideline or § 851. Ground Nine relates broadly to this ground in that Cherry argues that defense counsel were ineffective for failing to contest his status as a career offender, yet for a different reason. Cherry

[5] The United States Supreme Court denied Cherry's petition for certiorari on October 7, 2019, making Cherry's conviction final and beginning the one-year period for filing a § 2255 petition.

now contends that his 1994 conviction for attempted murder does not qualify as a predicate for application of the career-offender enhancement, because after serving his sentence for that offense, he received a letter from the Illinois Department of Corrections ("IDOC") stating that his civil rights had been restored. Arguably, Ground Nine is based on a different core of operative facts than Ground Four, but for purposes of discussion, the government presumes that the two grounds are sufficiently related. Without deciding the issue, the Court will presume the same and will grant Cherry's second motion for leave to amend his petition.

Cherry relies primarily on *Buchmeier v. United States*, 581 F.3d 561 (7th Cir. 2009), in which the Seventh Circuit held that an IDOC notice qualified as a restoration of civil rights and thus that the petitioner Buchmeier's prior burglary convictions could not count toward an enhancement under the Armed Career Criminal Act ("ACCA"), under the plain language of 18 U.S.C. § 921(a)(20).[6] There are two problems with Cherry's argument. First, Cherry claims to have received the same IDOC notice that was sent in *Buchmeier.* But he does not submit any evidence to support this allegation. Unlike Buchmeier, Cherry fails to submit a copy of the letter he purportedly received. Instead, he contends that a handful of Seventh Circuit decisions discussing IDOC's general policy of sending restoration-of-rights notices during the relevant time frame constitute "proof" that Cherry himself received such a letter. (ECF No. 14, 2d Mot. to Amend at 5.) The Court is unpersuaded. Cherry must show that his civil rights were restored with respect to this conviction, and he fails to do so by relying solely on a recollection that he received an IDOC notice. *See Lacey v. United States*, No. 10 C 4177, 2011 WL 3882781, at *3 (N.D. Ill. Sept. 2, 2011) (finding that petitioner failed to meet his burden of demonstrating that his rights had been restored where, like Cherry, he failed to produce an IDOC document and simply relied on quoting the text of the *Buchmeier* notice); *United States v. Shields*, 789 F.3d 733, 750 (7th Cir. 2015).

The second and more significant problem with Ground Nine is that even if Cherry had submitted sufficient evidence that his rights were restored with respect to the attempted-murder conviction, Cherry's argument is based on inapposite case law. *Buchmeier* and similar decisions pertain to predicate crimes for sentence enhancements under the ACCA. But Cherry was not sentenced under the ACCA; he was sentenced as a career offender under U.S.S.G. § 4B1.1. Under note 10 to § 4A1.2,[7] sentences resulting from convictions as to which a defendant had his civil rights restored are to be counted in computing criminal history. U.S.S.G. § 4A1.2 cmt. n.10. Therefore, even if Cherry had received a restoration-of-rights notice with regard to his conviction for attempted murder, the conviction would nonetheless count toward his career-offender status under the Guidelines. *See Pigee v. United States*, No. 13-CV-1155-DRH, 2016 WL 304863, at *3 (S.D. Ill. Jan. 26, 2016); *United States v. Miller*, No. 08 CR 629, 2010 WL

---

[6] The relevant provision states in pertinent part that any conviction "for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." 18 U.S.C. § 921(a)(20).

[7] The provisions of § 4A1.2 apply to the counting of predicate convictions for purposes of § 4B1.1. *United States v. Womack*, 610 F.3d 427, 430 n.4 (7th Cir. 2010) (citing U.S.S.G.§ 4B1.2 cmt. n.3).

4962808, at *7 (N.D. Ill. Dec. 1, 2010), *aff'd in part and vacated in part on other grounds*, 673 F.3d 688 (7th Cir. 2012). Accordingly, Cherry's counsel were not ineffective for failing to raise this issue.

**C. Certificate of Appealability**

Under Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability when it enters a final order adverse to the petitioner. The Court declines to issue a certificate of appealability. A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Cherry has failed to show that reasonable jurists (1) would find this Court's assessment of the constitutional claims "debatable or wrong," or (2) would find it debatable "whether the petition states a valid claim of the denial of a constitutional right" and "whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## CONCLUSION

Deandre Cherry's motion for leave to amend his § 2255 petition [6] is granted. Deandre Cherry's second motion for leave to amend his § 2255 petition [14] is granted. Deandre Cherry's petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [1], as amended, is denied. The Court declines to issue a certificate of appealability. Civil case terminated.

**DATE:** May 3, 2021

**Hon. Ronald A. Guzmán**
**United States District Judge**

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 6.3.3**
**Eastern Division**

United States of America
Plaintiff,
v.
Case No.: 1:20−cv−04752
Honorable Ronald A. Guzman
Deandre Cherry
Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, May 3, 2021:

MINUTE entry before the Honorable Ronald A. Guzman: Deandre Cherry's motion for leave to amend his § 2255 petition [6] is granted. Deandre Cherry's second motion for leave to amend his § 2255 petition [14] is granted. Deandre Cherry's petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [1], as amended, is denied. The Court declines to issue a certificate of appealability. Civil case terminated. Mailed notice. (kp, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE
# NORTHERN DISTRICT OF ILLINOIS

United States of America,

Plaintiff(s),

v.

Deandre Cherry,

Defendant(s).

Case No. 20-cv-04752
Judge Ronald A. Guzman

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐ in favor of plaintiff(s)
and against defendant(s)
in the amount of $ ,

which ☐ includes pre–judgment interest.
☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☐ in favor of defendant(s)
and against plaintiff(s)

.

Defendant(s) shall recover costs from plaintiff(s).

---

☐ other:

---

This action was *(check one)*:

☐ tried by a jury with Judge presiding, and the jury has rendered a verdict.
☐ tried by Judge without a jury and the above decision was reached.
☒ decided by Judge Ronald A. Guzman on a motion. Deandre Cherry's motion for leave to amend his § 2255 petition 6 is granted. Deandre Cherry's second motion for leave to amend his § 2255 petition 14 is granted. Deandre Cherry's petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 1 , as amended, is denied. The Court declines to issue a certificate of appealability. Civil case terminated.

Date: 5/3/2021 Thomas G. Bruton, Clerk of Court

Kerwin Posley, Deputy Clerk